No. 46,332

Northern Natural Gas Company, a Corporation, *Appellant*, v. Jean Williams, County Treasurer of Rice County, Kansas, *et al.*, *Appellees.*

(493 P. 2d 568)

Opinion filed January 11, 1972.

*Mark H. Adams, II*, of Adams, Jones, Robinson and Manka, of Wichita,

argued the cause, and *William S. Richardson,* of the same firm, and *F. Vinson Roach* and *Frank J. Duffy,* of Omaha, Nebraska, were with him on the brief for the appellant.

*Clarence J. Malone,* Chief Attorney, Department of Property Valuation, and *Matthew J. Dowd,* Assistant Attorney General, argued the cause, and *Vern Miller,* Attorney General, *Everett L. Baker,* County Attorney, and *John Bingham,* Attorney, Department of Property Valuation, were with them on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in an ad valorem tax action wherein Northern Natural Gas Company (plaintiff-appellant) sought to recover a portion of its 1969 taxes paid under protest in Rice County, Kansas, pursuant to the provisions of K. S. A. 79-2005. The district court of Rice County, Kansas, denied relief.

This case is a sequel to the one filed by Northern in the district court of Pawnee County wherein it challenged the order of the State Board of Tax Appeals determining the statewide 1969 ad valorem tax assessment of Northern's interstate natural gas pipeline operating property located in Kansas.

Here Northern seeks to assert the same issues concerning the validity of the state-wide assessment determined in the Pawnee County case. *(Northern Natural Gas Co. v. Dwyer,* 208 Kan. 337, 492 P. 2d 147.)

Northern in this action also challenges the valuation and assessment of its property in Rice County at the local level, which it claims results in discrimination against it.

All issues were determined adversely to Northern by the trial court.

In *Northern Natural Gas Co. v. Bender,* 208 Kan. 135, 490 P. 2d 399, the court decreed that the validity of an assessment of property of an interstate public utility on a state-wide basis cannot be challenged in a protest action. The court held:

"Where the property of an interstate public utility is assessed by the State Director of Property Valuation, as authorized by K. S. A. 79-1404 *Fifteenth,* the procedure and method of judicial review provided in K. S. A. 1969 Supp. 74-2426 (now L. 1971, ch. 249, § 1) is exclusive and the assessment may not be challenged in an action to recover protested taxes under K. S. A. 79-2005 (now L. 1971, ch. 303, § 1.)" (Syl. ¶ 1.)

As a result of *Bender* Northern is bound by our decision in *Northern Natural Gas Co. v. Dwyer,* supra, upholding the order of

the State Board of Tax Appeals assessing Northern's public utility property on a state-wide basis at 30% of justifiable value.

The trial court's erroneous consideration of the issues asserted by Northern as to the state-wide assessment is a nullity. The trial court had no jurisdiction to consider it. Failure to cross-appeal the trial court's denial of the Director's motion to dismiss does not preclude the appellate court from raising the issue on its own motion. (*Bammes v. Viking Manufacturing Co.*, 192 Kan. 616, 389 P. 2d 828.) The issue presented on this appeal, therefore, is limited to matters concerning the assessment of Northern's property at the local level in Rice County.

In the pretrial order filed May 28, 1970, in Rice County Northern contended the ad valorem taxes were assessed to Northern on a state-wide level of 30% of justifiable value, whereas all other property in Rice County was assessed at a level of 21% resulting in an imbalance of assessment and a lack of equalization.

It is to be noted no challenge was made concerning the parties defendant in this action. They include, among others, Jean Williams, County Treasurer of Rice County; Arthur Harvey, County Clerk, *ex officio* County Assessor; the Board of County Commissioners of Rice County, Dale Evans, Carl Frederick and John Burge, members of the Board of County Commissioners of Rice County; and *Ronald F. Dwyer, Director of the Property Valuation Department of the state of Kansas.*

On the issue material to this appeal the trial court made what it denominated "Findings of Fact and Discussion of Testimony" (filed June 12, 1970) where it said in part:

"Dr. Francis O. Woodard is the economist who, along with Mrs. Bonnie Hickle, prepared the real estate assessment ratio study for the State of Kansas. *The data which is deemed pertinent for this study is evaluated by county clerks in accordance with directives for valuation as advanced by Mr. Dwyer.* It would seem that any final determination of what data would be used for the study would be made by Mr. Dwyer or his employees. *Under date of April 9, 1968, Mr. Dwyer advised all county commissioners that his department was attempting to improve the study.*

"Against this background, it is difficult to understand the attempt made by *witnesses for defendants to discredit the validity of this study.* The *mechanics* of the study was fully explained by Dr. Woodard. His testimony in support of the reliability of the study was believable. Against this, there was the unsupported assertion by the county clerk that in his opinion all property in Rice County was assessed at 30% of true value. The adverse testimony of Robert Taggart does not stand up under the most elementary analysis. The adverse

testimony of John Green was burdened by lack of any real qualification of familiarity with real estate values in Rice County.

"Accordingly, it is found that the 1968 ratio study provides a meaningful guide, and in this case, the best evidence as to the relationship between assessed values of Rice County real estate and justifiable or true values of Rice County real estate. It is noted that the Board of Tax Appeals in Docket # 2206-9, Item 5, made a contrary finding. This may have been made on evidence similar to that introduced in this case. In 1968, Rice County real estate as a whole was assessed at 21% of fair value. Rural realty was assessed at only 19% of fair value and urban realty was assessed at 30% of fair value." (Emphasis added.)

The trial court in what is denominated "Conclusions of Law" stated in part:

"The equal protection clause of the Fourteenth Amendment to the Constitution of the United States and Section One of the Eleventh Article of the Kansas Constitution requires a uniform and equal rate of assessment and taxation. Even so, reasonable departures from uniformity and equality are excused as inevitable.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"*Beardmore v. Ling,* 203 Kan. 802, 457 P. 2d 117 (1969), does not control this case. That case is interpreted to mean that a difference in assessment ratios within a county of 14% of value for property generally as compared to 30% of value for a particular property is so disproportionate as to stongly suggest, and probably require a finding of, constructive fraud. There is nothing to tell a trial court how much closer the ratio of assessments must be before a finding of *lack* of constructive fraud should be made. In *Beardmore,* the variance was a little more than one to two. In this case now being decided, the variance is a little less than two to three. This difference between the two cases is weighed as being sufficient to warrant a finding that the variance between pertinent ratios in Rice County does not constitute constructive fraud. *It is the judgment of the court that this is the proper finding based upon a full consideration of the case with its many complexities.*

"A court is not empowered to grant a taxpayer relief in a tax protest action simply because it believes there are better methods to arrive at fair value than that employed by valuation officials if the value actually determined by the valuation officials appears to be within reason.

"*The plaintiff has failed to meet his burden of proving by the most believable evidence that its 1969 Rice County valuation and assessment is illegal or excessive.*" (Emphasis added.)

Northern contends its right to equal treatment under the Federal and State Constitutions was violated when the taxing officials knowingly assessed its property at 30% of justifiable value, while other property of the same class in Rice County was assessed at 21% of justifiable value. It points to the findings of the trial court which it says are clear except for the fact the trial judge did not grant the relief indicated to the taxpayer wronged by such discrimination.

It is clear that grossly excessive valuation of property for ad valorem tax purposes contravenes the due process clause of the Fourteenth Amendment to the United States Constitution and requires no showing of discrimination. (*Great Northern Ry. v. Weeks,* 297 U. S. 135, 80 L. Ed. 532, 56 S. Ct. 426.)

The right to equal treatment in matters of taxation is also a federal right. In *Hillsborough v. Cromwell,* 326 U. S. 620, 90 L. Ed. 358, 66 S. Ct. 445, relied upon by Northern, the court said:

"The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment. He may not complain if equality is achieved by increasing the same taxes of other members of the class to the level of his own. The constitutional requirement, however, is not satisfied if a state does not itself remove the discrimination, but imposes on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class. *Sioux City Bridge Co. v. Dakota County,* 260 U. S. 441, 445-447; *Iowa-Des Moines National Bank v. Bennett,* 284 U. S. 239, 247; *Cumberland Coal Co. v. Board of Revision,* 284 U. S. 23, 28-29. . . ." (pp. 623, 624.)

The right to equal treatment in matters of taxation is also a right protected by Article 11, Section 1 of the Constitution of the state of Kansas. The equal protection clause of the Federal Constitution and the state constitutional provisions pertaining to equality and uniformity of taxation are substantially similar, and in general what violates one will contravene the other. (*Associated Rly. Equipment Owners v. Wilson,* 167 Kan. 608, 208 P. 2d 604.)

This court has ample authority to grant complete relief to a taxpayer who feels aggrieved by reason of discrimination in a tax protest case under the provisions of K. S. A. 79-2005. Cases in which relief was granted are *Beardmore v. Ling,* 203 Kan. 802, 457 P. 2d 117; *Addington v. Board of County Commissioners,* 191 Kan. 528, 382 P. 2d 315; and *Kansas City Southern Rly. Co. v. Board of County Comm'rs,* 183 Kan. 675, 331 P. 2d 899.

It is Northern's contention that the trial court's findings leave no room for doubt that Northern was assessed knowingly at 30% of justifiable value while other taxpayers of the same class in Rice County were assessed at 21% of justifiable value; and that the Property Valuation Department in Rice County has clearly failed to carry out its statutory duty to equalize assessments.

The culprit in this case is the official state ratio study. On the

record here presented its invalidity for valuation and assessment purposes in Rice County is demonstrated.

The 1968 Kansas Real Estate Assessment Ratio Study was compiled pursuant to K. S. A. 79-1435 to 79-1444, inclusive. The 1968 report in its foreword specifically states that it is "prepared for the purpose of reflecting the relationship of assessed value to *sales price of real estate.*" (Emphasis added.) Note this does not say it reflects the relationship of assessed value to the "justifiable value" (See K. S. A. 79-501 and K. S. A. 1968 Supp. 79-503).

In *Sebits v. Jones,* 202 Kan. 435, 449 P. 2d 551, the assessment ratio studies for several years were introduced in evidence to establish the real estate ratio assessment for 1965. There was no evidence offered in support of the studies, and the county assessor testified he had little faith in them. The trial court refused under those circumstances to find there was a deliberate assessment of real estate at 21% of justifiable value, as the studies purported to show, and a judgment entered for the defendants was affirmed on appeal.

In *Beardmore v. Ling,* supra, a different situation confronted the court. There the trial court found that the median assessment ratio of real estate in Hodgeman County for 1965 was 14%. *The evidence of the county assessor himself, fully supported this finding,* which was said to be binding on appeal, and the court granted relief requested by the plaintiffs to recover the taxes paid under protest.

A review of the foregoing cases, together with others touching upon the use of the Kansas Real Estate Assessment Ratio Study, where attempts are made to establish discrimination in the valuation and asssesment of property, does not indicate that the validity of an assessment depends on the judgment of the trial court on matters of valuation.

This court has consistently adhered to the principle that the assessment and valuation of property are administrative functions, not judicial ones, and that courts will not substitute their judgment for that of the assessing authority in the absence of fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud. This principle has been based upon the considerations of constitutional law, on the nature of the assessment and valuation functions, and on an inherent lack of power in the courts. (*Mobil Oil Corporation v. McHenry,* 200 Kan. 211, 436 P. 2d 982.)

On the record here presented the Rice County clerk-assessor, Arthur Harvey, testified that in Rice County both personal property

and real property were appraised at 30% of justifiable value, notwithstanding the ratio study. He said the ratio study was not accurate. According to his testimony he considered the items enumerated in the statutes (K. S. A. 79-501 and K. S. A. 1968 Supp. 79-503). Mr. Harvey testified:

". . . he considered the items enumerated in the statutes in making an appraisal and assessment of real property and said these items were classification of land, size of land, location, depreciation including physical deterioration or functional or economic or social obsolescence, cost of reproducing improvements, productivity of land, earning capacity, capitalization of net income, rental value, sale value in the open market, comparable values, and the selling price. That he had over 8,000 parcels to assess each year and that he did not personally make a study of each but used township board members and realtors or former realtors to assist him. That he changed reports to him from these helpers with the advice of the County Commissioners. He testified he used capitalization of net income in some instances but that he wasn't clear on it. He stated he also used selling price in arrival at fair and justifiable value, and that he determined the weight to give selling price by talking to the County Commissioners and getting their opinion because they are the members of the board which might eventually determine it."

Mr. Harvey identified a letter addressed to the Rice County Board of County Commissioners dated April 9, 1968, signed by Ronald F. Dwyer, Director of the Property Valuation Department, requesting cooperation to improve the ratio study, urging county officials to take an interest in the study. The letter was introduced as plaintiff's Exhibit No. 55.

The foregoing testimony of Mr. Harvey was dubbed by the trial court as "the unsupported assertion by the county clerk," after the trial court found that the "data which is deemed pertinent for this study [the official state ratio study] is evaluated by county clerks in accordance with directives for valuation as advanced by Mr. Dwyer."

Mr. Harvey, the official county assessor of Rice County, testified:

". . . I do not know whether or not my office, or the Board of County Commissioners of Rice County, Kansas, made any objection to the property valuation department for the ratio study for Rice County for the year 1968, even though we are requested to do this if we feel it is inaccurate.

"Q. (By Mr. Bush) When you reviewed the ratio study then, and you were convinced that the level of assessment in Rice County was 30%, did you then advise the state property valuation department that you felt the ratio study was inaccurate?

"A. I doubt if we did. I doubt if we did."

It is readily apparent Mr. Harvey made no evaluation of the data

deemed pertinent for the ratio study in accordance with directives for valuation advanced by the State Director of Property Valuation.

*Ronald F. Dwyer,* the State Director of Property Valuation, under whose direction the ratio study is conducted, as a party defendant in this action, and represented in the trial court by counsel of the Department of Property Valuation and also by an assistant attorney general, *attacks the ratio study as being unreliable to establish justifiable value for real estate in Rice County.* His letter to the county clerk of Rice County, written prior to the initiation of this litigation, indicated his lack of confidence in the reliability of the ratio study and the failure of the county officials to cooperate in making the ratio study for Rice County meaningful.

The State Board of Tax Appeals, when it heard Northern's appeal from the order of the Director's state-wide assessment of Northern's property, found:

". . . The Ratio Study relates assessment levels with limited sales, but does not afford direct comparison with all elements included in justifiable value in accordance with K. S. A. 79-501 and 79-503, as amended, . . ."

The foregoing finding of the Board was before the trial court in this action.

Our court has repeatedly said that the ratio study, standing alone, is not conclusive evidence of justifiable value in establishing a basis for comparison in determining uniformity of values for assessment purposes. (*Cities Service Oil Co. v. Murphy,* 202 Kan. 282, 447 P. 2d 791; *Beardmore v. Ling,* supra; *Panhandle Eastern Pipe Line Co. v. Dwyer,* 207 Kan. 417, 485 P. 2d 149; and *Northern Natural Gas Co. v. Dwyer,* 208 Kan. 337, 492 P. 2d 147.)

In the *Panhandle* case, above cited, the court said *there are too many speculative elements involved and too few properties are subject to sale for the ratio study to be relied on for appraisal purposes.*

The court in *Panhandle* recognized *recent legislative enactment* in 1969 (K. S. A. 79-503 [*j*], L. 1969, ch. 433, § 10) providing:

". . . The ratio study shall not be used as an appraisal for appraisal purposes."

The 1969 enactment was said at least to indicate that the legislature was not out of harmony with the decisions of this court.

Here the record made before the trial court establishes the urban real property assessment in Rice County was at 30% of justifiable value; the personal property assessment in Rice County was 30% of justifiable value; the oil and gas assessments in Rice County were

at 30% of justifiable value; and public utilities in Rice County were assessed at 30% of justifiable value in accordance with the best judgment of the Director of Property Valuation. (See *Northern Natural Gas Co. v. Dwyer,* supra.)

As for "rural property" assessed in Rice County for the year 1968, the appellant must be content to rely only upon a median figure shown by the Kansas Real Estate Assessment Ratio Study for Rice County. This simply means that at least one-half of the property *sold* in Rice County and reported for the ratio study was assessed higher than the median ratio based upon *sales.*

In the year 1968 *sales* of "rural property" reported pursuant to statutory directives to the Director of Property Valuation were all inclusive. In 1969 the legislature changed the law. The change now appears as an amendment to 79-503 (L. 1969, ch. 433, § 10) wherein "rural property" is classified by dividing it into six catagories as follows: (1) Agricultural investment; (2) agricultural non-investment; (3) homesites; (4) planned subdivisions; (5) spot industrial and commercial; and (6) recreational. By this new enactment the legislature is undoubtedly attempting to clarify the confusion resulting from the sales ratio study reports made in prior years.

The record discloses the testimony of an expert real estate appraiser, Robert Taggart, *employed by the Director of Property Valuation* to analyze *rural sales of real property* which occurred in Rice County in 1968. An exhibit prepared under his supervision was put in evidence (Defendants' Exhibit No. 57). The exhibit discloses some rural property was sold on long-term contracts at a relatively low rate of interest not commonly found in the market. Rural property sold to contiguous owners or to those seeking to enlarge their holdings or farming operations comprised twenty-five transactions. Transactions involving the sale of rural property within the family comprised fourteen transactions. These transactions accounted for the bulk of the fifty-seven rural property sales in Rice County in 1968.

The exhibit discloses a fluctuation in the relationship of assessed value to *sales price* for those tracts sold ranging from 1% to 65%.

Mr. Taggart testified his analysis showed these sales did not represent accurate *market price* and required adjustment. He made specific reference to instances of sales of adjoining landowners, within families, sales which changed property to higher and more

profitable uses, trades, contract sales, and estate sales. He found fifty-two sales out of a total of fifty-seven, which in his opinion did not reflect fair market value. The total Rice County rural property sales used in the 1968 ratio study comprised only 1.33% of Rice County rural land. Of the 455,939 acres of taxable land in Rice County only 6,108 acres were sold in 1968 and reported in the ratio study.

A ratio study to be valid and meaningful as evidence in a case of this nature must begin with a sound premise. That is, the ratio study should reflect the relationship of assessed value of real property to the "justifiable value" of such real property, which is the statutory criterion upon which the assessment rate is to be applied.

The Kansas Real Estate Assessment Ratio Study for Rice County in 1968 reflected *only* the relationship of assessed value to *sales price* of real estate. *Sales price* is not "justifiable value," which valuation and assessing officials of the state are required to determine after giving consideration to the mandatory statutory factors enumerated in K. S. A. 1968 Supp. 79-503, by applying administrative judgment. (See K. S. A. 1968 Supp. 79-1435, 79-1436 and 79-1437.)

In determining the validity of assessments of real property for taxation, the essential question is whether the standards prescribed by 79-503, *supra*, have been considered and applied by taxing officials, or intentionally and grossly disregarded. (*Garvey Grain, Inc. v. MacDonald*, 203 Kan. 1, 453 P. 2d 59.) Compliance with the provisions of the statute are mandatory upon assessing officials in assessing real property, but the factors or combinations thereof to be considered in determining justifiable value may not all be pertinent to a specific property. What factors apply depends on the individual type of property, after consideration has been given to all of the factors. (*Northern Natural Gas Co. v. Dwyer*, supra.)

K. S. A. 1968 Supp. 79-503 (*i*) reads: "sale value on open market with due allowance to abnormal and inflationary factors influencing such values;"

"Sales price" does not embrace completely the single factor (*i*) in 79-503, *supra*.

It is apparent the legislature by enacting 79-503, *supra*, intended to avoid the effect of abnormal and inflationary factors which influenced the values of real property subject to ad valorem taxation. By "due allowance" in 79-503 (*i*), *supra*, the legislature intended

that valuation and assessing officials in the exercise of their administrative judgment should discount abnormal and inflationary factors affecting the sales value on the open market of real property being valued and assessed for ad valorem tax purposes. (*Northern Natural Gas Co. v. Dwyer*, supra.)

The foregoing discussion has been focused upon only one of the mandatory statutory factors in 79-503, *supra*. What becomes of the other ten factors enumerated? Under *Garvey* these must all be considered and those pertinent to a given class of property must be applied. The concluding paragraph in 79-503, *supra*, reads:

"It shall be unlawful to determine justifiable value of real property in any manner other than authorized and provided for in this section. Any person authorized to assess or equalize property shall consider class, location, productivity, rental values and capitalization."

By using the word "shall" the legislature *requires assessing officials* to specifically consider class, location, productivity, rental values and capitalization. These factors all *apply* to rural property which is now classified as "agricultural investment" (L. 1969, ch. 433, § 10). It is defined as including those properties presently used and operated as units with a source of economic life from the production of agricultural products that originate from land productivity. By the foregoing it is apparent the legislature intended to command assessing officials to use the income approach, as well as other approaches, in determining the justifiable value of real property. Of course, application of the statutory factors to determine justifiable value falls within the domain of administrative judgment and discretion.

Dr. Francis O. Woodard, an economist, who is chairman of the Department of Economics at Wichita State University and Director for the Center of Business and Economic Research at the University, testified that he had been serving as the *statistical supervisor* for the preparation of the *sales ratio* study for Kansas; that he was *responsible for compiling* such statistical report in 1968; that the data is original material collected by the registers of deeds and county assessors in each county; that the data cards are forwarded to the Property Valuation Department *where* they are edited, as to whether they should properly be included in the study; and *after this has been determined,* the cards are sent to him *for calculation.*

He testified if the local official in the county knows of some reason *which would require the exclusion of the particular sale*

from the ratio study, this *should be* indicated on the card in the appropriate place; that if the various transactions involve factors such as family sales, trades, enlargement of present operations, etc., the card *should have* it on there—"If the county official is energetic enough, yes, that would be on there;" that if the card comes to him he should have all the information the Property Valuation Department had in evaluating the card; but the Property Valuation Department considers some of the things on the cards and discards certain ones which are not sent to him.

The substance of his testimony is that *if* the local officials know factors affecting sales of real property, and *if* they make an entry on the card concerning it; and *if* the Property Valuation Department under the direction of the Director edits the cards and performs its function with respect to each sale, the cards he receives for statistical compilation have been purified for the study.

Dr. Woodard testified he was not an appraiser, but an expert economist. In his opinion, the sales ratio study "if properly conducted is the best measure of the level of assessment that is available on a testing basis." He said: "I doubt if everyone knows all the facts behind every sale, but in my opinion *the sales alone denote market value.*" (Emphasis added.)

Northern asserts Dr. Woodard's testimony to sustain its burden of proof to show discrimination against it by the assessing officials, but on this point the extent to which Dr. Woodard may have ventured in his testimony beyond the *statistical compilation* of *sales data* reported to him on the cards represents an attempt to repeal K. S. A. 79-501 and K. S. A. 1968 Supp. 79-503, which commands valuation and assessing officials of the state to value real property at its *justifiable value* for ad valorem tax purposes in accordance with its provisions.

The testimony of Dr. Woodard, which the trial court characterized as believable, fully explaining the *mechanics* of the study, was said by the trial court to support the reliability of the study.

Both the Director and the county clerk-assessor of Rice County, whose compliance with K. S. A. 1968 Supp. 79-1435, 79-1436 and 79-1437 is required to give the Kansas Real Estate Assessment Ratio Study in Rice County any substance, reflecting the level of assessment to the sales price of real property, challenge the validity of the study for 1968 in Rice County, because it is premised upon the *sales price* of real estate sold in Rice County in 1968, and does

not reflect the assessment level of real property in relation to "justifiable value" (defined by 79-503, *supra*).

The trial court found Rice County real estate as a whole in the year 1968 was assessed at 21% of "fair value." That finding based upon minimal *sales* of real estate in Rice County in 1968 has not been equated to "justifiable value" (as defined in K. S. A. 1968 Supp. 79-503) by any evidence in the record whatever. We need not burden this opinion with an attempt to construe the trial court's finding, because the trial court has placed its own construction on the finding by concluding that Northern has failed to meet its "burden of proving by the most believable evidence that its 1969 Rice County valuation and assessment is illegal or excessive."

If the trial court meant by its finding that Rice County real estate as a whole in the year 1968 was assessed at 21% of "justifiable value" (as defined in K. S. A. 1968 Supp. 79-503), there is no evidence in the record whatever to support such finding. On the record here presented the 1968 *sales ratio* study for Rice County would not support such finding.

Sales price of real property alone, which is the evidence in this case, does not establish "justifiable value" (as defined by 79-503, *supra*) for ad valorem tax assessment purposes. Nowhere in the record does the Kansas Real Estate Assessment Ratio Study for the year 1968 purport to embrace consideration of the mandatory factors enumerated in 79-503, *supra*, to reflect the level of assessment in relation to the justifiable value of real estate. Justifiable value (as defined by 79-503, *supra*) is the only valid premise upon which a meaningful assessment ratio study could be predicated as applied to the facts in this case.

K. S. A. 79-1439 (L. 1963, ch. 460, § 1) requires that all real and tangible personal property, which is subject to general property taxes, shall be assessed uniformly and equally at 30% of *justifiable value*. To grant Northern relief by assessing its property at less than 30% of justifiable value would discriminate against all taxpayers in Rice County who are assessed at 30% of justifiable value. Discrimination, in our opinion, is not rectified by creating more discrimination, as the facts in this case would indicate should Northern be permitted to recover the taxes it paid under protest.

We conclude that Northern has failed in its burden of proof to establish conduct by the assessing officials so arbitrary, oppressive

and grossly discriminatory as to constitute constructive fraud voiding the assessment. (*Sebits v. Jones*, supra.)

The judgment of the lower court is affirmed.

PRAGER, J., not participating.

FATZER, C. J., concurring in part and dissenting in part: I concur in the holding of the court that the district court's consideration of issues asserted by Northern as to the statewide assessment of its property is a nullity. That specific issue was advanced by the utility in *Northern Natural Gas Co. v. Bender*, 208 Kan. 135, 490 P. 2d 399, and determined adversely to its contention. (See Syl. ¶ 1, quoted in the court's opinion.) But that is the extent to which I concur.

The issue presented concerns only Northern's claim that the 1969 assessments of real property in Rice County resulted in invidious discrimination. However, it is clear to me that, from the record and the law as heretofore applied by this court, this tax protest action has been decided on its merits through consideration of issues not presented to this court on appeal. The court proceeds to review the entire record and quote and weigh the testimony of witnesses, which was discredited and found to be unreliable by the trier of facts—the district court. With the appeal in the posture stated, I must respectfully, although regrettably, premise my analysis of this case with a statement of the issues presented for appellate review, and which were clearly stated in oral argument by both parties.

The issues in this case were framed below by the pleadings and the pretrial order. One of the issues of fact to be determined, as stated in the pretrial order, was whether,

". . . the assessment made of Northern Natural's property assessed at around the area of 30 per cent of actual value, while assessments of other property . . . [was] so much lower, that disproportion shows the assessment of Northern Natural as being arbitrary and capricious, and hence legally indefensible?"

There was no dispute as an evidentiary matter of the Kansas Assessment Ratio Tax Study, or what the levy was in Rice County for 1969.

At the trial, evidence was introduced by both parties and the district court made the following pertinent findings of fact which are decisive of the question presented in this appeal:

". . . In 1968 (sic), Rice County real estate as a whole was assessed at

21% of fair value. Rural realty was assessed at only 19% of fair value and urban realty was assessed at 30% of fair value."

. . . . . . . . . . . . . .

"There is no showing of actual fraud in the valuation or assessment of plaintiff's property."

. . . . . . . . . . . . . .

"The difficult determination in this case is whether constructive fraud has been proven simply because Rice County real estate was generally assessed at 21% of true value while plaintiff's property was assessed at 30% of true value.

"The law recognizes that there will always be some discrepancies in this area of valuation. The question is, how much difference may there be before a finding of constructive fraud is the proper finding? *The finding of the court is that the assessment of county realty as a whole at 21% of fair value and the assessment of plaintiff's property at 30% of fair value is not a sufficient difference, standing alone, to show constructive fraud."* (Emphasis supplied.)

On the basis the deviation of assessments was insufficient to show constructive fraud, the district court concluded as a matter of law that,

"The plaintiff has failed to meet his burden of proving by the most believable evidence [which the court found was the testimony of Dr. Francis O. Woodard who prepared the real estate assessment ratio study] that its 1969 Rice County valuation and assessment is illegal or excessive."

Relying upon the findings of fact of the district court, Northern perfected this appeal and here contends the district court's findings require a reversal of the judgment as a matter of law. The contention is stated in Northern's brief as follows:

". . . that the property of other taxpayers was knowingly assessed at 21% of justifiable value, while Northern's property was intentionally, consistently, and systematically assessed at 30% of original cost in contravention of Section 1 of Article 11 of the Constitution of Kansas, and of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States . . ."

It is important here to note that there *was no cross-appeal perfected by the appellees—either from the findings of the district court, or from the judgment rendered, or from any other rulings of the court.*

No cross-appeal having been perfected, there remains a single question to be resolved by this court. It should have been necessary only to consider whether the assessment of Northern's property at 30 percent of "justifiable value" while all other property was generally assessed at 21 percent of "justifiable value" constituted constructive fraud upon the taxpayer in contravention of Article 11, Section 1 of the Kansas Constitution. However, the court leaves that question unanswered, and considers in the alternative whether

the sales ratio study, which was supported by extrinsic evidence of an expert with wide experience on the subject and whose qualifications were accepted by the court, is competent evidence upon which to base a finding of "justifiable value" for assessment purposes. First, the court concludes the ratio study evidences only the sales price of real estate, and does not reflect the relationship of assessed value to "justifiable value"—the proper criterion under K. S. A. 79-501 and 79-503 upon which the assessment rate is to be applied for ad valorem tax purposes. Second, it concludes there are too many speculative elements involved and two few properties subject to sale in the ratio study, pertinent to this case, for it to be relied upon for appraisal purposes. Third, it concludes the sales price of real property as disclosed by the ratio study *shows an imbalance of assessment and lack of equalization*, but that sales price alone does not establish "justifiable value," and that nowhere in the record does the ratio study purport to embrace a consideration of the mandatory factors enumerated in 79-503; hence, the taxpayer has failed to sustain its burden of proof to show discrimination. The court's conclusion follows from the premise that this court has an inherent right to review the record to determine as a matter of law whether the evidence supports the findings of the district court, and if, upon such review, the evidence is concluded to be insufficient to support the findings, this court may determine the case on its merits as a matter of law.

The court's affirmance of the judgment is based upon at least two assumptions with respect to the law of this jurisdiction, which I think are erroneous. In the first place, this court is not permitted to reach the merits of an issue without it having been raised by the parties either by direct or cross-appeal. In the second place, the court's opinion holds that while the sales ratio study may be admissible in a tax protest action, the court proceeds to emasculate its probative value to a nullity, by concluding it is incompetent evidence of "justifiable value" for assessment or equalization purposes, and the rule announced by our former decisions concerning the relevancy and probative force of the ratio study is thereby overruled by implication. Those issues are hereafter respectively discussed.

First, it is settled in this state that if the appellant does not question the correctness of the findings of fact of the district court, and the appellee does not cross-appeal attacking the sufficiency of evidence to support those findings, they become the law of the case, and this court may not at the instance of the appellee examine the

record to determine whether they are supported by substantial evidence. In that event, the scope of appellate review is limited to the question whether the judgment is supported by the pleadings, the pretrial order, and the findings of fact, and the evidence cannot be considered. It is unnecessary to extensively cite our many cases on this point, but a few of them are *Benson v. Rosebaugh,* 128 Kan. 357, 278 P. 41; *Lake Superior Lbr. Co. v. Homestead B. & L. Ass'n,* 139 Kan. 565, 32 P. 2d 202, and *Shelton v. Simpson,* 184 Kan. 270, 272, 336 P. 2d 159.

The rule was stated in *Cohen v. St. L., Ft. S. & W. Rld. Co.,* 34 Kan. 158, 8 Pac. 138:

". . . Where a case has been tried . . . and the district court has . . . rendered judgment in accordance with the findings of fact, and the plaintiff in error in the supreme court does not question the correctness of the findings of fact, and the defendant in error has filed no petition in error or cross-petition in error, the supreme court cannot at the instance of the defendant in error examine the evidence to determine whether the findings of fact are sustained by sufficient evidence, or not." (Syl. ¶ 6.)

In the recent case of *Commercial Asphalt, Inc. v. Smith,* 200 Kan. 362, 436 P. 2d 849, this court considered the question, and in the opinion said:

". . . There has been no appeal from the findings and conclusions and they are now controlling in the case . . ." (l. c. 364.)

K. S. A. 60-2103 (*h*) provides in effect that where notice of appeal has been served in a case and the appellee desires to have a review of rulings and decisions of which he complains, he shall do so by cross-appeal. The statute is mandatory, and our case law is consistent with its mandatory language. Time does not permit quotation from our many cases with respect to the review of errors claimed by an appellee where he fails to cross-appeal. In essence, the principle may be stated, "if you don's raise it, you waive it." For analogous cases, see *Schul v. Clapp,* 154 Kan. 372, 376, 118 P. 2d 570; *Hoffman v. Sohio Petroleum Co.,* 179 Kan. 84-86, 292 P. 2d 1107; *Anderson Cattle Co. v. Kansas Turnpike Authority,* 180 Kan. 749, 308 P. 2d 172; *Gould v. Robinson,* 181 Kan. 66, 70, 71, 309 P. 2d 405; *Turner v. Benton,* 183 Kan. 97, 102, 325 P. 2d 349; *James v. City of Pittsburg,* 195 Kan. 462, 463, 407 P. 2d 503; *Scrammahorn v. Gibraltar Savings & Loan Assn,* 197 Kan. 410, 412, 416 P. 2d 771, and *Reinecker v. Board of Trustees,* 198 Kan. 715, 722, 426 P. 2d 44.

In the instant case, this court was not appealed to for a review of whether the findings of fact were supported by substantial evidence,

so, right or wrong, the findings settled the question of the deviation of assessment on Northern's property and other real estate in Rice County and became the law of the case, and may not now be considered by this court upon appellate review. The pretrial order has been referred to, and it would serve little purpose to examine the pleadings. It is sufficient to say they presented the issues upon which the evidence of both parties was introduced and upon which the district court based its findings of fact and conclusions of law. In passing, it may be said that under our decisions hereafter referred to, there was substantial evidence introduced to support the district court's findings.

Second, the clear import of our prior decisions concerning the sales ratio study is that its probative force is an evidentiary matter to be weighed and determined by the district court. Where no evidence is offered in support of the ratio study, such study, standing alone, is not conclusive evidence to establish a basis for comparison in determining uniformity of values for assessment purposes. Where, however, evidence is offered in support of the sales ratio study, and if found by the district court to provide a meaningful guide and the best evidence as to the relationship between assessed values in a county and justifiable or true value of real estate therein, it is my opinion such evidence may be considered substantial, and sufficient to warrant the upholding of findings of a district court of variations in the assessment of real property at justifiable value within a county.

In concluding as a matter of law that the sales ratio study, when supported by the testimony of an expert witness whose qualifications were accepted by the district court, has no relevancy or probative value and in effect is no evidence to support variations in the assessment of real estate as a whole in a county, the court has ignored a uniform course of decisions established in this jurisdiction holding to the contrary. The impressive body of rulings thus ignored repeals by implication those cases hereafter referred to, and such a massive repudiation is made possible by the assertion of a new and doctrinary concept that the sale price of real property has no relationship to justifiable value for ad valorem tax assessment purposes.

This court initially considered the probative value of the sales ratio study in *Board of County Commissioners v. Brookover*, 198 Kan. 70, 422 P. 2d 906. *Brookover* was cited with approval in *Cities*

*Service Oil Co. v. Murphy,* 202 Kan. 282, 447 P. 2d 791, where it was held:

"Ratio studies provided for by K. S. A. 79-1436 are proper evidence of justifiable value but such evidence, standing alone, is not conclusive in establishing a basis for comparison in determining uniformity of values for assessment purposes." (Syl. ¶ 4.)

In the opinion it was said:

"The force and effect of many of the 1963 enactments were considered and discussed in *Board of County Commissioners v. Brookover,* supra, where it was held that ratio studies provided for by K. S. A. 79-1436 may properly be considered in determining the necessity for reappraisal to arrive at justifiable value as provided by K. S. A. 79-1439. *It was further held that the sale prices of real estate given by willing purchasers to willing sellers is substantial evidence of value for appraisal purposes, although consideration of other factors mentioned in K. S. A. 79-503 may be proper. In other words, the holding in Brookover indicates that a ratio study, based on sales, is admissible and may be substantial evidence of justifiable value, but the holding therein cannot be construed to mean that such evidence is conclusive.*

"Under the showing here, the trial court chose not to find the ratio study, based on sales of less than one percent of real estate parcels, standing alone, *unsupported by any other evidence, as to actual percentage of justifiable value,* to be a proper basis of comparison in establishing the assessment of plaintiffs' properties as constructive fraud. Under the facts related, we believe the trial court's finding is justified." (1. c. 291, 292.) (Emphasis supplied.)

In *Beardmore v. Ling,* 203 Kan. 802, 457 P. 2d 117, the question was again considered, and we held:

"An assessment ratio study made pursuant to statute is admissible in evidence as tending to establish the assessment ratio of real estate even though it is not conclusive on that subject." (Syl. ¶ 5.)

In the opinion it was said:

"The sole evidence offered to establish the assesssment ratio of real estate in the *Cities Service* case was the assessment ratio study for 1965, which disclosed the ratio as being twelve per cent of justifiable value. The trial court found this to be insufficient proof of value on which it might base a comparison with plaintiffs' oil and gas properties. *On appeal we said that while the assessment ratio study was admissible in evidence as tending to establish the assessment ratio of real estate, it was not conclusive evidence on the point, and that the trial court's finding, under the facts of that case, was justified.*

"In the *Sebits* case, although it is not disclosed in the opinion, the assessment ratio studies for several years were introduced in evidence to establish the real estate assessment ratio for 1965. *There was no evidence offered in support of the studies, and the county assessor testified he had little faith in them. The trial court refused, under those circumstances, to find there was a deliberate assessment of real estate twenty-one per cent of value, as the studies*

*purported to show, and a judgment entered for the defendants was affirmed on appeal."* (1. c. 808.) (Emphasis supplied.)

. . . . . . . . . . . . . .

"In the present case *the trial court found* that the assessment ratio of real property in Hodgeman County was fourteen per cent of justifiable value. That finding is supported by substantial competent evidence. The evidence further established that oil and gas leases were assessed for that same year, through the use of state schedules prepared for such purpose, at thirty per cent of justifiable value.

We are constrained to hold that the inequality which existed between the assessment of Beardmore's oil and gas leases on the basis of thirty per cent of justifiable value and the assessment of real property on the basis of but four-teen per cent of justifiable value was so gross and arbitrary as to constitute constructive fraud." (1. c. 809, 810.) (Emphasis supplied.)

In *Panhandle Eastern Pipe Line Co. v. Dwyer,* 207 Kan. 417, 485 P. 2d 149, this court again stated the general rule of law, and it was said:

"We are forced to conclude that the ratio study standing alone is not con-clusive as to value. In *Cities Service Oil Co. v. Murphy,* 202 Kan. 282, 447 P. 2d 791, we held:

" 'Ratio studies provided for by K. S. A. 79-1436 are proper evidence of justifiable value but such evidence, standing alone, is not conclusive in es-tablishing a basis for comparison in determining uniformity of values for assessment purposes.' (See, also, *Beardmore v. Ling,* 203 Kan. 802, 457 P. 2d 117." (1. c. 423.)

In *Northern Natural Gas Company v. Dwyer* (Pawnee County), 208 Kan. 337, 492 P. 2d 147, this court considered again the ratio study and its evidentiary value in statewide assessment appeals as provided by K. S. A. 74-2426. In logical sequence from language in *Panhandle,* supra, this court declared the ratio study to be im-proper for challenging statewide assessments, the inference being that the proper action to present the ratio study would be a tax protest action initiated under K. S. A. 79-2005, challenging the local assessment of property in a county.

The holding of the decisions just reviewed, and their clear impli-cation, is that the sales ratio study is admissible, and may be sub-stantial evidence of justifiable value as tending to establish the assessment ratio of real estate, but, standing alone, is not conclu-sive on the subject, and that where there is no extrinsic evidence offered in support of the sales ratio study, a district court may refuse to find that a variation in assessment ratio is sufficient to establish constructive fraud. On the other hand, where expert evidence is offered in support of the study, and the district court finds the evi-

dence provides a meaningful guide and is the best evidence as to the relationship between assessed values and justifiable or true value of real estate, such evidence is sufficient to uphold the finding of a district court of variations of the assessment of real estate. As indicated, the court's opinion impliedly overruled the authority of *Brookover,* supra; *Cities Service,* supra; *Beardmore,* supra; *Panhandle Eastern,* supra, and *Northern Natural Gas,* supra, with respect to the probative value of the sales ratio study, *and we owe it to the district courts, attorneys, and the litigants of this state to say so, positively; or if their authoriy is to be limited only, to point out definitely the extent of such limitation.*

Before leaving this portion of the dissent, I wish to note my agreement that this court has *appellate power* to determine in a given case, whether the evidence supports the judgment rendered as a matter of law, *where the sufficiency of the evidence is properly raised and presented for consideration by the court by appeal or cross-appeal.* However, I cannot agree with that portion of the court's opinion that considers the credibility of witnesses and substitutes its judgment with respect to the weight and sufficiency of the evidence introduced below. The dangers apparent in such a practice have long been recognized by this court. (*Allen v. Schauf,* 202 Kan. 348, 449 P. 2d 1010; *White v. Hutton,* 205 Kan. 715, 472 P. 2d 223.)

In view of the record presented and the findings of the district court, it is perhaps improper to comment upon the evidence introduced below. However, since the court chose to do so, I briefly respond. Upon the basis of the overwhelming preponderance of the evidence, only vaguely disputed by the appellees, the district court found and concluded the level of assessment in Rice County on January 1, 1969, was 21 percent. While Mr. Harvey, the county clerk, and Mr. Taggart, testified to the contrary, and the county clerk stated he believed the ratio study to be inaccurate, the level of assessment within the county was an issue of fact presented to the court by the pleadings and the pretrial order. The court had jurisdiction to decide the issue. Evidence was submitted to the court, proper foundation laid for the introduction of expert testimony, and upon its consideration the court made the finding it was authorized to make. It had jurisdiction to find either correctly or erroneously. It chose to give no credence to Mr. Harvey's or Mr. Taggart's testimony, and the court was within its jurisdiction in

weighing their evidence. In addition, the county officials of Rice County failed to contest the results of the ratio study through procedures established by the Legislature (K. S. A. 79-1441 [a]), by effecting an appeal to the Board of Tax Appeals if they believed the ratio study to be inaccurate. The failure of those officials to pursue the statutory remedy to contest the validity of the ratio study, estops them from disputing its accuracy, or asserting as evidence that it was incorrect. But the assertions of both the county clerk and Mr. Taggart may be dismissed with the statement the appellees *failed to raise the sufficiency of the evidence by a cross-appeal.* Under K. S. A. 60-252, the court's findings may not be set aside unless clearly erroneous, and due regard is to be given to the district court's findings with respect to the credibility of the witnesses. In short, the district court was within its jurisdiction to discredit and find to be unreliable the testimony of either the county clerk or Mr. Taggart. In any event, the district court's findings were not clearly erroneous, and they may not now be collaterally attacked in the absence of a cross-appeal.

I now turn to the question to be decided. Was the assessment of Northern's property at 30 percent of justifiable value while all other real property in Rice County was assessed at 21 percent of justifiable value so arbitrary, capricious, or oppressive as to amount to constructive fraud? The district court concluded it was not; my brothers in the majority opinion, while deciding that question, affirm that determination by implication. I must respectfully disagree.

What amount of overvaluation must the taxpayer prove? There is no fixed rule as to the disparity required between the assessed valuation and the value found by the court to establish constructive fraud. Each case must stand on its own facts. The rule prevailing in this state with respect to the uniformity of taxation was stated by Mr. Justice Rousseau A. Burch in *Wheeler v. Weightman,* 96 Kan. 50, 149 Pac. 977, as follows:

". . . The essentials are that each man in city, county and state is interested in maintaining the state and local governments. The protection which they afford and the duty to maintain them are reciprocal. The burden of supporting them should be borne equally by all, and this equality consists in each one contributing in proportion to the amount of his property. To this end all property in the state must be listed and valued for the purpose of taxation, the rate of assessment and taxation to be uniform and equal throughout the jurisdiction levying the tax. The imposition of taxes upon selected classes of property to the exclusion of others, and the exemption of selected classes to

the exclusion of others, constitute invidious discriminations which destroy uniformity . . ." (l. c. 58.)

In considering the question presented in this case and in applying the general statement above quoted, pertinent rules should first be stated. One, is that taxes will not be enjoined, or found grounds for relief under 79-2005, merely because they seem to the court to be excessive. The duty and discretion of placing a value on property for purposes of taxation is placed on the assessing officials, and a court may not assume that task merely because its judgment of value differs from that of the taxing officials. Mere errors of judgment of the assessing officials is no reason for interference by courts, but a taxpayer is entitled to the honest judgment of the assessing officials. Another, is that if an assessment is fraudulently made excessive, or if it is arbitrarily, or capriciously made, and is so out of proportion to the actual value as to give reasonable assurance the officials could not have been honest in fixing the valuation, courts of equity are justified in enjoining the enforcement of the tax, or in granting relief pursuant to 79-2005. (*Salt Co. v. Ellsworth County*, 82 Kan. 203, 107 Pac. 640; *Garvey Grain, Inc. v. MacDonald*, 203 Kan. 1, 453 P. 2d 59.) Under all of the decisions, a court may grant relief where fraud or conduct equivalent thereto exists, or where the action of the taxing officials is illegal, arbitrary and discriminatory as to amount to constructive fraud. (*Hitch Land & Cattle Co. v. Board of County Commissioners*, 179 Kan. 357, 363, 364, 295 P. 2d 640.)

This court has defined *arbitrary* to mean "without adequate determining principles . . . not done or acting according to reason or judgment"; *oppressive*, as "harsh, rigorous, or severe"; *capricious*, as "changing apparently without regard to any laws." (*Eureka B. & L. Ass'n v. Myer*, 147 Kan. 609, 78 P. 2d 68.) In *City of Clay Center v. Myers*, 52 Kan. 363, 365, 35 Pac. 25, we defined *constructive fraud* to mean "any act of omission or commission contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience, and operates to the injury of another."

A review of our cases considering the question of constructive fraud discloses that the court has followed two more or less clearly defined lines of reasoning. First, where the taxpayer seeks relief solely upon the ground of overvaluation, he must present to the court a clear and convincing case of excessive overvaluation if he is to prevail on that ground alone. Terms used by the court in defining

"excessive" overvaluation are "gross discrimination" (*C. B. & Q. Rld. Co. v. Comm'rs of Atchison Co.,* 54 Kan. 781, 39 Pac. 1039; "intentional discrimination" (*Bank of Garnett v. Ferris,* 55 Kan. 120, 39 Pac. 1042); "inequitable discrimination" (*Bank v. Lyon County,* 83 Kan. 376, 111 Pac. 496), and "invidious discrimination" (*Wheeler v. Weightman,* supra). See, also, *Symns v. Graves,* 65 Kan. 628, 70 Pac. 591, where the court determined that a 6 percent deviation standing alone was insufficient evidence to establish fraud. But see *Salt Co. v. Ellsworth County,* 82 Kan. 203, 107 Pac. 640, where it was alleged the tax commission fixed an exorbitant and excessive valuation upon the taxpayer's property, which the commission knew to be grossly excessive. (*Finney County v. Bullard,* 77 Kan. 349, 94 Pac. 129; *Addington v. Board of County Commissioners,* 191 Kan. 528, 382 P. 2d 315; *Beardmore,* supra.) Generally speaking, it may be said that if the taxpayer cannot establish his claim of overvaluation by clear and convincing evidence, his alternatives for relief are restricted to reliance upon the tender mercies of the administrative hierarchy.

On the other hand, our cases tend to establish that if a taxpayer can show his property has been overvalued, and also that it was overvalued as a result of an adopted policy or practice on the part of state or local taxing officials to knowingly fail to carry out their statutory duty to equalize assessments, or when such discrimination results from divergent action by different assessing officials where such results follow from intentional, systematic, and persistent overassessment of one class of property by one official or department, so that the effect is action in concert to discriminate against the taxpayer, or from some other improper administrative misfeasance or nonfeasance, the taxpayer will be able to obtain relief from the court on a showing of a comparatively small mathematical disparity in assessment. (*Bank v. Lyon County,* supra; *C. B. & Q. Rld. Co. v. Comm'rs of Atchison Co.,* supra; *Bank of Garnett v. Ferris,* supra; *Beardmore v. Ling,* supra; *Kansas City Southern Rly. Co. v. Board of County Comm'rs,* 183 Kan. 675, 331 P. 2d 899; *Hitch Land & Cattle Co. v. Board of County Commissioners,* supra; *Garvey Grain, Inc. v. MacDonald,* supra.) The list of authorities is not intended to be exhaustive.

The Legislature has provided some guidance for a permissible degree of tolerance in the appraisement and assessment of real property. K. S. A. 79-1426 (L. 1963, Ch. 460) provides criminal

sanctions and penalties making it unlawful for any assessing official, including the Director of Property Valuation and the various local assessing officials, whose duty it is to list, value, assess or equalize real estate for taxation, to willfully or knowingly fail to appraise, assess or equalize the values of any real estate subject to general property taxes as required by K. S. A. 79-1439. The penalties for violation of the statute include forfeiture of office. The final sentence of the section, when enacted in 1963, reads: "A variance of 10%, of 30% [*i. e.* 3%] shall not be considered a violation of this section."

The section was amended in 1969 (Ch. 433, Sec. 4) in the same bill which amended what is now K. S. A. 79-1439. Both statutes were effective July 1, 1969. The latter section requires all real and tangible personal property which is subject to general property taxes, to be appraised uniformly and equally at fair market value in money as defined in K. S. A. 1968 Supp. 79-503, as amended, and assessed at 30 percent thereof. The last sentence of the section reads: "A variance of ten percent (10%) of such thirty percent (30%) [*i. e.* 3%] shall not be considered a violation of this subsection . . ." The last sentence of K. S. A. 79-1426, as amended in 1969 (Ch. 433, Sec. 4) reads: "A variance of 10% in the appraisal at fair market value in money shall not be considered a violation of this section."

The two statutes should be construed *in pari materia*. As thus construed, 79-1439 establishes a standard for equalization, and 79-1426 establishes the same ten percent standard for appraisals.

While 79-1426 provides standards of proof of criminal violation of a taxing official for his failure to list or properly value, assess, or equalize real property for taxation, it would be futile to say that conduct of such an official, which is unlawful and the road to prison on the criminal side of the court, would not likewise be unlawful on the civil side of the court, where a taxpayer seeks to establish a deviation of appraisals or assessments of real property in violation of either 79-1426 or 79-1439. This court reached that conclusion in the *Addington* case in construing 79-1426, and it was said:

"... 79-1426 provides that any assessor who shall knowingly fail to list or return for assessment or valuation any real or personal property, or who shall knowingly or wilfully list or return for assessment or valuation any real estate or personal property at other than its true value in money, or who shall wilfully or knowingly fail to equalize any real or personal property at its

true value in money, shall be guilty of a misdemeanor. Even though the assessor may have thought he was acting in good faith, *his illegal acts in failing to comply with the mandate of the legislature constituted bad faith and constructive fraud* . . ." (l.c. 533, 534.) (Emphasis supplied.)

The same conclusion follows with respect to the last sentence of 79-1439.

A rapid computation will show the Legislature intended to set lawful parameters of assessment between 27 and 30 percent. It is clear that the deviation found in this case by the district court constitutes a violation of the statute. I am forced to conclude that, on the basis of the findings of the district court, the assessment of Northern's property in Rice County at the statutory maximum of 30 percent of justifiable value while other real property similarly situated was assessed at 21 percent of justifiable value fails to comply with the legislative mandate, constitutes bad faith, and constructive fraud.

In addition, the district court specifically found "that in Rice County that department [Property Valuation Department] has clearly failed to carry out its statutory duty to equalize assessments." The district court then referred to the case of *McManaman v. Board of County Commissioners,* 205 Kan. 118, 468 P. 243, in which this court stated its decision should not be interpreted as sanction by this tribunal of the serious inequities which have plagued taxpayers throughout the state, who find themselves the victims of unequalized assessments which principally have resulted since 1963, from the failure of the responsible administrative officials to carry out assessment laws enacted by the Legislature; that since the enactment of that statute (L. 1963, Ch. 460), taxpayers have been beset with unequal tax burdens resulting from the fact that not all counties were assessing property at 30 percent of justifiable value, or that property in a county was not being uniformly equalized and assessed. It is common knowledge throughout the state that the responsible taxing officials have in the past failed to come to grips with the duty enjoined upon them by the Legislature of equalizing the assessment of property throughout the state and within each of the various counties.. What was said by this court in *Avery v. City of Lyons,* 183 Kan. 611, 331 P. 2d 906, is an apt illustration:

"Justice would prove to be a mockery if evidence of the assessed value of property for taxation purposes in the State of Kansas were held to be conclusive evidence of the true value of such property, when as a matter of fact and in practice the State Commission of Revenue and Taxation, which has super-

visory power over county assessors, with full knowledge permits assessments throughout the state to be made at substantially less than 50% of fair market value. See, *Kansas City Southern Rly. Co. v. Board of County Comm'rs*, 183 Kan. 675, 331 P. 2d 899. " (1. c. 619.)

In *Garvey Grain, Inc.* and in *McManaman*, the supervisory responsibilities for the administration of the assessment and tax laws of this state were said to rest squarely on the shoulders of the Director of Property Valuation with attending enforcement power and authority. His duties with respect to his general supervision over assessors, boards of county commissioners, county boards of equalization, and all other boards of levy and assessment, were set forth in both opinions, to the end that all assessments of property—real, personal, and mixed—be made relatively just and uniform at 30 percent of justifiable value [30% of fair market value (L. 1969, Ch. 433)], and to *require* all such officials, under criminal sanctions and under penalties of forfeiture and removal from office, to assess all property at such a value. See, also, *State ex rel., v. Dwyer*, 208 Kan. 437, 493 P. 2d 1095, concerning this court's approval of the Department of Property Valuation's efforts to equalize the assessment of property throughout the state, commenced by the Director after the tax levy in this case was extended.

In light of the findings of the district court that the Property Valuation Department had failed to carry out its statutory duties to equalize assessments, it is hard to understand how it could have had any difficulty in determining the variance was discriminatory. The record indicates there was protracted failure of the state and local assessing officials to equalize the appraisal and assessment of real estate in Rice County, which has resulted in discriminatory treatment of the plaintiff, and which must be squarely laid at the department's feet since the state has not removed such discrimination. In my judgment, the court has ample authority to grant complete relief to the wronged taxpayer under the provisions of 79-2005, irrespective of whether the discrimination results from an intentional, systematic, and persistent undervaluation of all other property of the same class, and a subsequent failure to carry out the statutory duties to equalize, or where, as here, the discrimination results from acts of both misfeasance and nonfeasance on the part of the taxing authorities.

In *Kansas City Southern Rly. Co.* supra, I concurred in the court's holding that the petition stated a cause of action, and said:

". . . Thus, for a period of years the commission was advised by its own studies that the statutes of the state were being flagrantly disregarded by the local assessment officials in Cherokee County, but it failed to take corrective measures to require that the assessments be made at the true or market value of the property assessed; consequently, such failure, over such period of years, can justify no other conclusion than that of an adopted policy or practice of constructive fraud and discrimination against the plaintiffs and their property. The result is that the rate of assessment fixed by the commission at 60 percent of the true or market value of plaintiffs' property, when applied to the rate of assessment of 21 percent of the true or market value of all other property located in that county and subject to the same tax levy, is illegal and the petition states a cause of action. . . ." (1. c. 683, 684.)

Before concluding, an additional comment need be made. I cannot agree with the court's opinion that those taxpayers in Rice County who were also assessed at 30 percent of justifiable value would receive unfair treatment if this court were to grant Northern the relief prayed for. The adopted rule of law in this state is to the contrary. The rule may be stated that where the unlawful discrimination results from the assessment of property owned by one taxpayer at a rate proportionately higher than that of others, the remedy almost universally supplied to the aggrieved taxpayer is to reduce his assessment to the same percentage of justifiable value as was used in the cases of those in whose favor the discrimination was granted, and compute his taxes accordingly. (*Addington v. Board of County Commissioners*, supra, pp. 531, 532).

In *Addington* this court adopted the federal rule stated in *Sioux City Bridge v. Dakota County*, 260 U. S. 441, 67 L. Ed. 340, 43 S. Ct. 190, 28 A. L. R. 979, where it was said:

". . . This Court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law . . ." (p. 446.)

Those taxpayers in Rice County whose property was also assessed at 30 percent of justifiable value had a viable remedy to contest those assessments. (79-2005.) The failure of those consenting taxpayers to avail themselves of a statutory right does not estop Northern from asserting its right.

In my judgment, the record shows a protracted and flagrant disregard of the legislative mandate, and an adopted policy of

illegality and constructive fraud that I cannot sanction. With respect to that, and related issues not before the court for appellate review, I must dissent.

FONTRON, J., joins in the foregoing concurring and dissenting opinion.