No. 46,257

PANHANDLE EASTERN PIPE LINE COMPANY, A Corporation, *Appellant,*
v. RONALD F. DWYER, Director of Property Valuation of the State
of Kansas; STATE BOARD OF TAX APPEALS OF KANSAS and STATE
BOARD OF EQUALIZATION OF KANSAS; and CHARLES B. JOSEPH,
RALPH McCARTY, EUGENE E. LEE, and WILLIAM D. ANDERSON, JR.,
the Members of the State Board of Tax Appeals of Kansas and
the State Board of Equalization of Kansas; and JOHN E. ROYSTON,
Attorney and Secretary of the State Board of Tax Appeals of
Kansas and the State Board of Equalization of Kansas, *Appellees.*

(485 P. 2d 149)

Opinion filed May 15, 1971.

*John S. Seeber,* of Adams, Jones, Robinson and Manka, of Wichita, argued
the cause, and *C. A. Conoley,* of Kansas City, Missouri, was with him on the
brief for the appellant.

*Clarence J. Malone,* Chief Attorney for the Property Valuation Department,
argued the cause, and *John L. Bingham,* Attorney for the Property Valuation
Department, and *John E. Royston,* Attorney and Secretary of the State Board
of Tax Appeals, were with him on the brief for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment of the district
court of Johnson County, Kansas upholding an order of the State
Board of Tax Appeals which determined the state-wide 1969 ad

valorem assessment of the appellant's interstate natural gas pipeline property located in Kansas.

The primary issue presented for this court's determination is whether the trial court erred in not finding that the order of the State Board of Tax Appeals (hereinafter referred to as the Board) was unreasonable, arbitrary or capricious in not granting the appellant relief from the order.

The facts leading up to this appeal will be stated.

The appellant operates an interstate pipeline system originating in gas fields in the Texas and Oklahoma panhandles and the Hugoton field in southwest Kansas. From Liberal, Kansas the appellant operates four parallel pipelines running through twenty-six counties in Kansas and extending through the states of Missouri, Illinois, Indiana and Ohio and into southeast Michigan where it serves an area in and about Detroit.

The Federal Power Commission at this time controls and limits the earnings which appellant is permitted to make by limiting appellant to a rate of return of 6⅝% on the original cost of its property less depreciation. Any buyer of plaintiff's property would also be limited to the same earnings base and rate as appellant now has. The F. P. C. requires depreciation to be taken at the rate of 3½% per year on appellant's property in Kansas, and the rate base on which appellant is permitted to earn is reduced each year by additional mandatory depreciation except for net adjustment made to increase original cost less depreciation as a result of replacements of items that are part of the system or for new construction. All figures relating to the original cost and depreciation of appellant's entire system used by both parties have as their basic source appellant's annual report filed with the F. P. C.

Appellant filed with the Director of Property Valuation, on statements and schedules prescribed by the director, a report showing a "Return Value" of $30,967,805.00 for 1969 for properties in the state of Kansas. The director, by an order dated May 28, 1969, assessed appellant's tangible properties in the state of Kansas for 1969 in the sum of $56,078,497.00.

Appellant's timely appealed to the Board on June 27, 1969, from the findings, rulings, orders, decisions and other final action of the director pursuant to K. S. A. 74-2438. On August 1, 1969, the Board, having heard all the evidence presented by appellant and the director on said appeal, entered its final order August 20, 1969, denying the appeal.

The appellant then appealed the order of the Board to the district court of Johnson County, where part of its property is located. The appellant challenged the order of the Board as unreasonable, arbitrary or capricious and sought relief therefrom under the provisions of K. S. A. 1970 Supp. 74-2426.

The trial court concluded:

". . . All factors specified by K. S. A. 79-503 for determining of justifiable value were considered by the assessing authorities.

"The use by the Board of a 5% capitalization rate was a matter of judgment and not unlawful.

"The factor of F. P. C. control on the income earnings of the appellant (F. P. C. rate base of original cost less accrued depreciation) was considered as an element of the Board's valuation and appraisal.

"The system market value approach or unit method is best suited for valuation of plaintiff's property for its entire system and an allocation made on the percentage of the original cost in Kansas bears to the original cost of the entire system, and the correct Kansas allocation percentage is 29.47%.

"The market approach and net stock and debt approach to value were not used or applied by either party, and should not be used or applied in this matter, and was not pertinent under the evidence before the Board.

"This is a review of an order of the Board of Tax Appeals which involves not only the assessment of the appellant's property for taxation but also the question of equalization of that assessment, and it is the performance of a highly technical administrative function.

"Under K. S. A. 79-709, after the completion of an assessment it must be apportioned not only to the several counties but to the townships, cities, school districts and other taxing districts which is determined by a formula which apportions to each taxing district that part of the total assessment as is proportionate to the total length of lines within the taxing disrict. The District Court should not undertake to 'substitute its judgment' for the determinations of the Director of Property Valuation and the findings of the Board of Tax Appeals, or to impose a method of distribution which is incomplete under statutory requirements.

"The Court further finds that the order of the Board of August 20, 1969, appealed from herein, with respect to plaintiff, was not unreasonable, was not arbitrary, and was not capricious. Said order was lawful and applied required statutory standards of value to plaintiff's property. The order was also reasonable and not arbitrary or capricious in all respects, and in accordance with the evidence before it. There was ample evidence to support said order and findings of and by the Board.

"There is no evidence that the Board of Tax Appeals has been guilty of doing acts under the influence of a corrupt motive, or acted with unreasonable, arbitrary or capricious conduct; and therefore the administrative decision should be upheld by this Court.

"The record indicates only a difference of opinion as to the amount of assessment and there is nothing in the record to justify a conclusion by the Court

upon review that the Board of Tax Appeals in this case has not exercised good faith and rendered an opinion honestly formed."

The appellant has now appealed to this court raising substantially the same issues.

Before considering the specific objections we will give attention to the limited extent of this court's power to review.

The statute under which this appeal is taken, K. S. A. 74-2426, closes with the following statement:

". . . In hearing and considering any such appeal, the court shall not enforce or give effect to any rule or regulation which it shall find to be unreasonable, arbitrary or capricious."

However, regardless of the statute it has always been the rule of this court that matters of taxation, especially assessments, are administrative in their character and should remain free of judicial interference in the absence of fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud. (*Harshberger v. Board of County Commissioners,* 201 Kan. 592, 442 P. 2d 5; *Mobil Oil Corporation v. McHenry,* 200 Kan. 211, 436 P. 2d 982.)

In the early case of *Symns v. Graves,* 65 Kan. 628, 70 Pac. 591, we stated at page 636 of the opinion:

". . . Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges who are not elected for that purpose with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law. The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. These are fundamental principles in the law of taxation and cannot be waived aside to meet the exigencies of any particular case. . . ."

Unless there has been fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud in the assessment, the courts cannot interfere.

Appellant first contends—

"The trial court erred in finding the order of the Board of Tax Appeals determining the assessment of Appellant's property in Kansas was not unreasonable, arbitrary or capricious under Chapter 368 of the Laws of Kansas 1969 when the pertinent mandatory statutory factors for determining the justifiable value required by K. S. A. (1964) 79-501 and K. S. A. 1968 Supp. 79-503 which in common experience determine and control the justifiable value of Appellant's property, were not considered, applied, or followed, and were totally ignored, lost sight of, or willfully abandoned by the Board."

In considering the merits of this appeal, it is necessary to have

before us K. S. A. 79-501 (Laws of 1963, Chapter 460, § 3) which provides in part:

"Each parcel of nonexempt real property shall be valued at its justifiable value in money, the value thereof to be determined by the assessor from actual view and inspection of the property; but the price at which such real property would sell at auction or forced sale shall not be taken as the criterion of such justifiable value. . . ."

K. S. A. 1968 Supp. 79-503 provides how justifiable value shall be determined as follows:

"Justifiable value shall mean the value of real estate which is arrived at after applying factors hereinafter set forth.

"To arrive at the justifiable value of real property the assessor or appraiser shall actually view and inspect the property. The price at which real property would sell at auction, forced sale or any transaction in which personal elements were a factor regarding the sale price shall not be taken into consideration in determining the justifiable value. In determining the justifiable value of real property, the assessor or appraiser shall consider that value in money arrived at when the following factors or combinations thereof are considered:

"(a) The proper classification of lands and improvements;
"(b) the size thereof;
"(c) the effect of location on value;
"(d) depreciation, including physical deterioration or functional, economic or social obsolescence;
"(e) cost of reproduction or improvements;
"(f) productivity;
"(g) earning capacity as indicated by lease price or by capitalization of net income;
"(h) rental or reasonable rental values;
"(i) sale value on open market with due allowance to abnormal and inflationary factors influencing such values;
"(j) comparison with values of other property of known or recognized value; and
"(k) valuations of land and improvements on the basis of the foregoing elements and such other elements as may be just and proper.

"It shall be unlawful to determine justifiable value of real property in any manner other than authorized and provided for in this section. Any person authorized to assess or equalize property shall consider class, location, productivity, rental values and capitalization."

The appellant contends that "(d) depreciation, including physical deterioration or functional, economic or social obsolescence; (e) cost of reproduction or improvements; (f) productivity; (g) earning capacity as indicated . . . by capitalization of net income;" and "(j) comparison with values of other property of known or recognized value;" are pertinent factors listed in the statute and should have been given consideration.

Our attention is called to *Garvey Grain, Inc. v. MacDonald,* 203 Kan. 1, 453 P. 2d 59, in which we held the standards prescribed by the statute may not be ignored by taxing officials.

The commission contends and the trial court found that—"all factors specified by K. S. A. 79-503 for determining justifiable value were considered by the assessing authorities."

We have some difficulty in finding the basis for appellant's contentions.

The appellant's expert witness capitalized his anticipated income of $30,383,113.00 at a rate of 7% and got a value on the income approach of $434,044,400.00. He made certain adjustments and arrived at a value of $437,500,000.00 for the total plant. He then took 29.47% of that amount as the indicated values of operating properties within the state of Kansas and arrived at a value of $128,931,250.00. He next took 30%, the assessment ratio for Kansas, of the total value in Kansas and arrived at assessment for properties in Kansas of $38,373,865.00.

The Board's expert witness capitalized his anticipated income of $29,854,000.00 at a rate of 5% and got a value on the income approach for the property in Kansas of $186,928,324.00 after certain adjustments. He then took the assessment ratio of 30% and arrived at an assessment for properties in Kansas of $56,078,497.00.

The chief difference in the results obtained by the two experts is the rate used for capitalization of income. The net operating income for 1969 was used by the Board's expert witness—$29,-854,662.00. The appellant's expert witness took the past five years and arrived at an average income of $30,383,113.00. The difference was not material. The difference in the rate used of 2% resulted in a difference in value of $150,000,000.00 for the system at large, or a difference in the value of the property in Kansas of slightly less than $50,000,000.00. We have used round figures to stay within the realm of our ability to calculate. Neither do our figures take into consideration adjustments for materials and supplies, etc.

If the Board was not guilty of unreasonable, arbitrary or capricious conduct in using the 5% figure for capitalizing income this court should not interfere with the assessment order.

The trial court found that the use by the Board of a 5% capitalization rate was a matter of judgment and not unlawful. We are inclined to agree.

The appellant argues that the assessment should be close to the

rate base and therefore the rate of capitalization should be at least equal to the rate of return.

The Board argues that a prudent purchaser would be satisfied with a lower rate of return on investment if he knew at the same time he would receive annually a partial return of the investment. We do not care to engage in an argument over a statement made in good faith by the Board.

When the Board used the income approach, there was reflected in the results reached physical functional productivity and economic depreciation.

The Board's engineer also used original cost and reproduction cost less depreciation and the weighted results arrived at a comparable figure.

A careful examination of the record discloses no showing by appellant which would justify a finding of unreasonable, arbitrary and capricious conduct on the part of the Board in using the capitalization rate of 5%.

The appellant next contends that the Board and the trial court erred in failing to use the median real estate assessment ratio of the official sales ratio study for the assessment ratio in each county in which appellant had property in order to provide a uniform rate of assessment and taxation of appellant's property in each county under Article 11, Section 1, of the Kansas Constitution.

We are forced to conclude that the ratio study standing alone is not conclusive as to value. In *Cities Service Oil Co. v. Murphy,* 202 Kan. 282, 447 P. 2d 791, we held:

"Ratio studies provided for by K. S. A. 79-1436 are proper evidence of justifiable value but such evidence, standing alone, is not conclusive in establishing a basis for comparison in determining uniformity of values for assessment purposes." (See, also, *Beardmore v. Ling,* 203 Kan. 802, 457 P. 2d 117.)

It might also be suggested that the 1969 legislature passed a law, (K. S. A. 79-503 [*j*]) not made applicable to this case, stating:

". . . The ratio study shall not be used as an appraisal for appraisal purposes."

It would at least indicate the legislature was not out of harmony with the decisions of this court.

There are too many speculative elements involved and too few properties are subject to sale for the ratio study to be relied on for appraisal purposes. It may, however, serve as a signal that a reappraisal is in order.

We are forced to conclude that the appellant has not by the ratio study alone presented sufficient evidence of inequality to justify a reduction of their assessment apportioned to the various counties.

The appellant complains that:

"The trial court erred in failing to find the order of the Board of Tax Appeals was unreasonable, arbitrary, or capricious because of the fact the order on its face and the evidence conclusively proves the Board failed to equalize the assessed value of Appellant's property with property of other similar companies."

The Board concluded and the conclusion was approved by the trial court:

"The taxpayer has the burden of proof and has failed to sustain the burden of proof to establish by evidence that the assessment lacks uniformity."

A careful search of the record by us discloses no evidence which would justify a finding that there was not a good faith attempt to equalize the assessment of appellant's property and property of other pipeline companies. It is disclosed the sixty-two pipelines have been appraised by the Kansas taxing authorities using the factors that were used here in arriving at the assessed value. It would result in real lack of uniformity if a single taxpayer were assessed on a different basis. It would serve no useful purpose to attempt to state what is not in the record or to attempt a justification of one isolated appraisal of the old Board as affecting the appraisals of the new Board.

The judgment is affirmed.

APPROVED BY THE COURT.

KAUL, J., dissenting: I dissent from the holding stated in subsection (1) of paragraph 2 of the syllabus for the reason that the assessment was not made in accordance with the mandate of K. S. A. 79-503.

As indicated in the majority opinion, this court has repeatedly said matters of taxation especially assessments are administrative in character and should remain free of judicial interference in the absence of fraud. It is equally true that this court has frequently said that assessment of property for taxes must be made in accordance with the provisions of applicable statutes and where taxing officials fail in this respect the issue presented to the court is not the exercise of their administrative judgment, but the legality of

their acts. (*Garvey Grain, Inc., v. MacDonald,* 203 Kan. 1,453 P. 2d 59.)

The controlling issue in this case is whether the control of appellant's earnings by the Federal Power Commission was recognized in determining the justifiable value of appellant's property by the taxing authorities involved.

It was admitted by Director Dwyer and Mike Gillgannon, an expert witness called by the State Board of Tax Appeals, that FPC control of earnings was a factor to be considered under 79-503 (*d*). On this point Dwyer testified as follows:

"Q. What is your definition of economic obsolescence, Mr. Dwyer?

"A. Well economic obsolescence is a loss in value generally due to conditions outside the property itself.

"Q. Yes. And is it not a fact that a control that is exercised by the Federal Power Commission, which limits a company's earnings to its rate base of original cost less depreciation, is a factor affecting the earnings and economic value of the company outside of the property itself?

"A. Yes.

"Q. And is it not also true that when you consider a trended method, that if you are using, I believe, what was used here, a Handy Whitman Index, you are trying to show what it would cost to reproduce, actually reproduce the same line and everything today, with the cost index being of 1911, as equal to one hundred?

"A. I think that is correct, yes, sir, for the reproduction part.

"Q. And is it not true that when you arrive at the reproduction cost, that the economic obsolescence of the Federal Power Commission limiting the earnings to original cost less depreciation is not reflected in the trended approach?

"A. If you stop there, it is reflected in the trended approach, but if you stop merely at the reproduction, it is not reflected at that time, no sir."

The Board's expert Gillgannon was questioned on the point by reference to Dwyer's testimony as follows:

"Q. Now, were you present when Mr. Dwyer the Property Valuation Director testified?

"A. Today?

"Q. Yes.

"A. Yes, I was here.

"Q. He testified that the earnings base of the Federal Power Commission, of the earnings rate of six and five-eighths percent on original cost less depreciation reflected an economic obsolescence with respect to this company's property, do you agree with his statement?

"A. I would agree to that, yes."

Although it was admitted to constitute economic obsolescence, I am unable to find FPC control reflected or recognized by Gillgannon in his calculations of the three approaches—income, cost

and reproduction cost less depreciation which he used as correlated value indicators with allocated mathematical weights of twenty, forty and forty percent, respectively, in arriving at justifiable value.

In calculating reproduction cost less depreciation, Gillgannon did use a three and one-half percent depreciation rate in which he says he allowed one percent for functional obsolescence and one-half of one percent for economic obsolescence. However, he made no claim that either allowance reflected the abnormal factor of FPC control of appellant's earnings based on a rate base of original cost less depreciation.

Despite the admissions of Director Dwyer and Gillgannon previously referred to, the trial court in Finding No. 33 found that "F. P. C. regulation and control does not constitute functional, economic or social obsolescence."

Time does not permit a discussion of appellant's evidence. It will suffice to say the undisputed evidence discloses that because of the abnormal factor of FPC control, appellant is limited to earnings of six and five-eighths percent on a rate base equal to the original book cost of its property less accrued depreciation. F. P. C. control was admitted by appellees to fall within the scope of economic obsolescence under K. S. A. 79-503 (d). It was not applied as a factor in assessing appellant's property.

In Finding No. 34 the trial court found—"The rate base of FPC or any other regulatory body is not named in K. S. A. 79-503 as one of the factors to be considered." It is true that 79-503 does not mention the rate base of a regulatory body as a factor to be considered. However, in addition to what has been said with respect to subsection (d), subsection (g) specifically enumerates "earning capacity as indicated by . . . capitalization of net income," as a factor to be considered. In his calculation of capitalization of net income, Gillgannon used a capitalization rate of five percent. It should be kept in mind that the use of a lower capitalization rate results in a higher value indicator, while the effect of the use of a higher rate is conversely a lower indicator. On cross-examination Mr. Gillgannon admitted that prudent investors would have wanted a rate of seven and one-half percent or more. Gillgannon failed to supply any satisfactory explanation for his choice of a five percent capitalization rate. In view of the limitation on appellant's earnings, Gillgannon's arbitrary choice of a five percent capitalization

rate appears unrealistic and reflects a further failure to consider an obviously pertinent factor enumerated in 79-503.

In view of our holding in *Garvey Grain, Inc., v. MacDonald,* supra, the judgment should be reversed.

FATZER and SCHROEDER J. J., join in the foregoing dissent.