No. 47,242

Marvin F. Gordon, *Appellant*, v. Sue Hiett, Treasurer, Shawnee County, Kansas, *Appellee*.

(522 P. 2d 942)

Opinion filed May 11, 1974.

*Myron Listrom*, of Sloan, Listrom, Eisenbarth, Sloan and Glassman, of Topeka, argued the cause and was on the brief for the appellant.

*Matthew J. Dowd*, county counselor, argued the cause, and *Ray D. Siehndel*, legal intern, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an action instituted by the plaintiff pursuant to K. S. A. 79-2005 (now K. S. A. 1973 Supp. 79-2005) for taxes paid for the year 1969 under protest. The plaintiff alleges his property was illegally assessed for tax purposes at forty-three percent of the fair market value, which resulted in a tax so excessive in relation to the assessment of all other property in Shawnee County, Kansas, as to constitute constructive fraud and discrimination against plaintiff and his property. The defendant denies the taxing officials of Shawnee County arbitrarily and fraudulently assigned a value for tax assessment purposes against plaintiff's property in an amount which was not the actual fair market value of said property or which in any way interfered with or discriminated against plaintiff, and further specifically denies there was any illegal valuation assigned to plaintiff's property for tax purposes. Judgment was entered for the defendant and plaintiff appeals.

The trial court made findings of fact and conclusions of law and plaintiff challenges the conclusions of law. Since the findings of fact are accepted by the parties as supported by substantial competent evidence, the record does not reveal the evidence before the trial court. The findings of fact and conclusions of law are as follows:

"FINDINGS OF FACT

"1. That plaintiff at all times material herein was the owner of a long term lease on the following described property:

"Kansas Avenue, Lots 267, 269 and 271, in the City of Topeka, Kansas, the terms of which lease require the plaintiff to pay all taxes assessed against said property.

"2. That for the year 1969, the within described real property had a fair market value of $198,200.00.

"3. That for the year 1969, the taxing officials of Shawnee County, Kansas, established an assessed value to the above described property at $86,560.00.

"4. That plaintiff's property was taxed for the year 1969 the total sum of $11,760.04, of which sum the plaintiff paid under protest the amount of $5,880.02 on the 19th day of December, 1969, to the Treasurer of Shawnee County, Kansas, as provided by law.

"5. That the plaintiff timely commenced his suit to recover the amount of taxes paid under protest on the 16th day of January, 1970, as is provided by law.

"6. That for the year 1969 real property in Shawnee County, Kansas, was assessed at a varying ratio of 6% to 45% of fair market value.

"7. That for the year 1969 the plaintiff's property was assessed at a ratio equal to 43% of fair market value.

"8. That all real property in Shawnee County, Kansas, for the year 1969 was assessed at a median ratio of 15% of fair market value.

"9. That there is no actual fraud or bad faith on the part of the taxing officials and that Mr. Schnellbacher, the Assessor, made every effort since assuming that office in 1969 to comply with the relevant tax statutes.

"10. That by virtue of the status of the assessment of all the property in Shawnee County in 1969 said Assessor had some 64,000 parcels of real estate on the tax rolls of this county and could only reassess each year individually, new construction and requests for revaluation that came into the assessor's office, which amounted to approximately 2500-3500 appraisals a year.

"11. That over a period of many years property which had been placed on the tax rolls at a certain figure remained the same unless improvements were made thereon or requests were made for revaluation and when said revaluations were made the property was appraised in accordance with other property in the existing area so that inequities would not take place within that area.

"12. That this resulted in the wide variance mentioned in Finding of Fact # 6.

"13. That plaintiff's property along with all downtown properties was re-appraised in 1965 by an independent appraisal company, Colelayer and Trumble out of Ohio, and that plaintiff's property and all property on Kansas Avenue was equalized at that time.

"14. That plaintiff's property was in no way assessed differently from other like property on Kansas Avenue.

"CONCLUSIONS OF LAW

"That under the facts in this case the Court is of the opinion that there was not a systematic, arbitrary or intentional valuation of the property of the plaintiff herein at a substantially higher valuation than they placed on other properties within the same tax district and particularly property of a like nature. The Court further feels that the plaintiff has not carried his burden of proof in convincing this Court that his assessment was grossly discriminatory as to amount to constructive fraud on the part of the taxing officials of this county."

The plaintiff lists three points on appeal. Each of the points is aimed at the validity of the assessment of plaintiff's property; hence, they will be considered as raising an identical question of law.

It should immediately be apparent to all persons involved in tax matters in this state that this case is distinctive in that the admissibility of the ratio studies authorized by K. S. A. 79-1436 (now K. S. A. 1973 Supp. 79-1436) as evidence, is not involved. The determinative feature in many of our like cases has been the use of the ratio studies as evidence. (*Cities Service Oil Co. v. Murphy*, 202 Kan. 282, 447 P. 2d 791; *Sebits v. Jones*, 202 Kan. 435, 449 P. 2d 551; *Panhandle Eastern Pipe Line Co. v. Dwyer*, 207 Kan. 417, 485 P. 2d 149; *Northern Natural Gas Co. v. Williams*, 208 Kan. 407, 493 P. 2d 568.)

The cases principally relied on by plaintiff are *Kansas City Southern Rly. Co. v. Board of County Comm'rs*, 183 Kan. 675, 331 P. 2d 899; *Addington v. Board of County Commissioners*, 191 Kan. 528, 382 P. 2d 315; and *Beardmore v. Ling*, 203 Kan. 802, 457 P. 2d 117. The *Kansas City Southern* case merely held the taxpayer's petition stated a cause of action. The petition alleged that the railroad was assessed at sixty percent of its true value while other property in the county was assessed at twenty-one percent. The court stated that the alleged acts on the part of the commission, when coupled with the alleged knowledge it had at the time were so arbitrary, oppressive, and grossly discriminatory as to constitute constructive fraud. At the time this case was decided the statutes of this state required that all property, real or personal, be assessed at its actual value in money (G. S. 1949, 79-1406), and required that both real and personal property be assessed at its true value (G. S. 1949, 79-1401).

In *Addington*, the plaintiff's grain elevator in Morton County was assessed at thirty percent of its true value in accordance with the grain elevator schedule compiled by the director of property valuation, while the median ratio of the assessed value of real estate in the same county was twelve percent of actual value. In reversing the lower court's judgment and holding the assessment of the Addington elevator property to be discriminatory, we said:

"Uniformity in taxing implies equality in the burden of taxation, and this equality cannot exist without uniformity in the basis of assessment as well as in the rate of taxation. . . .

". . . Uniformity of taxation does not permit a systematic, arbitrary or intentional valuation of the property of one or a few taxpayers at a substantially higher valuation than that placed on other property within the same taxing district; however, this uniformity and equality in a constitutional and statutory sense does not require mathematical exactitude in the assessment valuation of property for taxation. In the instant case if all the property in the county had been assessed at thirty percent of its true value, plaintiff would have no cause to complain. The fraud upon plaintiff's rights resulted from the arbitrary distinction made between his elevator property and other property in the county. Mere excessiveness of an assessment or errors in judgment or mistakes in making unequal assessments will not invalidate an assessment, but the inequality or lack or uniformity, if knowingly high or intentionally or fraudulently made, will entitle the taxpayer to relief. (*Bank v. Lyon County*, 83 Kan. 376, 111 Pac. 496; *Hamm v. State*, [Minn. 1959], 95 N. W. 2d 649.)" (pp. 531, 532.)

We again point out that at the time of the decision in *Addington*

the statutes of Kansas required real and personal property to be assessed at its true value.

In *Beardmore,* the evidence disclosed that the taxpayers' oil and gas properties were assessed at thirty percent of justifiable value as the statutes then required, while at the same time real estate was knowingly assessed by the same taxing officials at fourteen percent of its justifiable value. We held that the gross discrepancy between the assessed value of Beardmores' oil and gas properties and the assessed value of real estate in Hodgeman County constituted constructive fraud in the sight of the law. Prior to the decision in *Beardmore* the legislature enacted K. S. A. 79-1439 (Vol. 6, 1964), (now K. S. A. 79-1439), which states:

"From and after January 1, 1964, all real and tangible personal property which is subject to general property taxes shall be assessed uniformly and equally at thirty percent (30%) of its justifiable value, as hereinafter defined and provided."

In the instant case the admitted facts disclose the taxpayer's property for the year 1969 had a fair market value of $198,200. The plaintiff's property for the year 1969 had an assessed value of $86,-560. The assessed value was forty-three percent of the market value. The admitted facts also disclose that for the year 1969 real property in Shawnee County was assessed at from six percent to forty-five percent of fair market value and that the median for real property was fifteen percent of fair market value. Notwithstanding these findings, the trial court held there was not a systematic, arbitrary or intentional appraisal of the plaintiff's property at a substantially higher valuation than other properties within the same taxing district, and particularly property of a like nature. The court further stated the plaintiff had not carried his burden of proof to convince the court the assessment was so grossly discriminatory as to amount to constructive fraud.

It is the law of this jurisdiction that the assessment of property, when done in accordance with the law, is an administrative function in which courts will not interfere or substitute their judgment. If, however, the taxing officials do not perform their duties in accordance with the law the issue presented to the court is not the exercise of administrative judgment, but the legality of their acts. *Builders, Inc. v. Board of County Commissioners,* 191 Kan. 379, 381 P. 2d 527; *Mobil Oil Corporation v. Medcalf,* 207 Kan. 100, 483 P. 2d 1111.)

The Constitution of the State of Kansas states: "The legislature shall provide for a uniform and equal rate of assessment and taxation, . . ." (Art. 11, Sec. 1.) Since the power of taxation is a legislative function and the legislature is specifically charged with providing equal rate of assessment it has authority to provide the means and agencies to enforce its responsibility. *Silven v. Osage County,* 76 Kan. 687, 92 Pac. 604.) In furtherance of this purpose the legislature directed all property, real and personal, be assessed at thirty percent of the fair market value. We are concerned with the right of the taxing officials to assess the property at any figure other than thirty percent of the fair market value. It is natural that the legislative directive of thirty percent and the constitutional mandate of uniformity would reach its battleground in the courts. The defendant argues that in no event should the court lower the assessed value to less than thirty percent of fair market value. To do otherwise would override the legislative mandate and impose the criminal sanctions of K. S. A. 79-1418.

In *Northern Natural Gas Co. v. Williams,* supra, we emphasized for the first time in a long series of tax cases that discrimination is not rectified by creating more discrimination. It was recognized that in the involved county, urban property, personal property, oil and gas leases, and public utilities were assessed at thirty percent of justifiable value. To grant the relief requested by *Northern* by lowering its assessment to the median ratio of twenty-one percent applicable to all real estate in the county, would discriminate against other property assessed at thirty percent of justifiable value.

Property assessed at thirty percent of justifiable value exists throughout the state, including Shawnee County. To grant the relief requested by the taxpayer in this case to the median of fifteen percent of fair market value of real property would result in creating discrimination against those whose property is assessed at thirty percent.

The constitutional requirement of uniformity takes preference over a legislative directive to assess at a fixed percentage of justifiable value. (*Addington v. Board of County Commissioners,* supra.) Uniformity of tax burdens can never be achieved in this state between a taxpayer within a county and between taxpayers in different counties by adjusting individual assessments to the median ratio of real property in each county. We are inclined, in the interest of uniformity throughout the state, to stress the legislative direc-

tive to assess at thirty percent of justifiable value. An individual assessment is usually challenged by a showing that the median ratio for real property for that county is substantially below the challenged assessment. To permit relief on that basis creates further discrimination against all taxpayers in every county who are assessed at the legislative directed rate of thirty percent. It also promotes a continuous trend by the involved county to further depart from the legislature's mandate. Means must be sought to avoid these results. It can best be done by bold action of assessors, reviewing authorities, and the courts to promote uniform assessment at the statutory rate. Authority to achieve this end is not lacking. The director of property valuation by K. S. A. 79-1404, *Sixteenth*, has the power to require any county board of equalization to raise or lower the value of any property ". . . to the end that all property shall be valued and assessed in the same manner. . . . " Similarly, the State Board of Tax Appeals, sitting as a state board of equalization, has power to equalize the assessment of all property in the state. (K. S. A. 79-1409.)

The power delegated by the legislature to the director of property valuation to equalize taxes by blanket order was approved by this court in the recent case of *State, ex rel., v. Dwyer*, 208 Kan. 437, 493 P. 2d 1095. The order was directed to the county commissioners of ninety-six counties to adopt a resolution that the county assessor apply to each class of rural agricultural investment land the valuation percent changes for the year of 1971 as shown in the directive. The court said:

"The attainment of perfection in the area of taxation will seldom, if ever, be likely. So long as imperfection inheres in humankind, the institutions which mankind creates will doubtless be infected with the same virus. But progress does occur from time to time. This is exemplified, we believe, in the plan contrived by the director to equalize rural property values. . . ." (p. 446.)

In the instant case the taxpayer's property has a fixed and stipulated value. To assess the property at any percentage creates discrimination against property not assessed at the same percentage. Conceding some discrimination is inherent in our conclusion it would seem logical that adherence to the statutory directive of thirty percent of justifiable value should dominate. Any conclusion other than this would enhance discrimination rather than deter discrimination. If we must judicially acknowledge discrimination exists we prefer that those discriminated against are not those assessed at the rate designated by the legislature.

We distinguish the *Kansas City Southern* case on the basis the case was decided on whether the petition stated a cause of action. It has no precedential value in this case in the absence of factual findings. We distinguish *Addington* on the basis the thirty percent rule was not in effect and no property in Morton County was assessed at its true value. In *Beardmore,* the statutory directive of thirty percent of justifiable value was in existence. The taxpayers' oil and gas properties were assessed at thirty percent as compared to the median real estate assessment of fourteen percent. No argument was made that other real and personal property in Hodgeman County was assessed at thirty percent of true value. We must disapprove the result in *Beardmore* to the extent that it is in conflict with the decision in this case.

We direct attention to K. S. A. 1973 Supp. 79-1447, which provides:

"On and after January 1, 1974, any county in this state in which the real and tangible personal property which is subject to property taxes is not appraised and assessed as required by K. S. A. 79-1439, and acts amendatory thereof or supplemental thereto, such county and the taxing subdivisions of the state located therein shall not thereafter receive any state moneys from the local ad valorem tax reduction fund which would otherwise be payable to such county under the statutes of this state until such county shall have been determined to be in compliance with said section 79-1439, as amended.

"The director of property valuation shall on September 15, 1974, and annually thereafter, notify the director of accounts and reports of any county which is not in compliance with the provisions of K. S. A. 79-1439, as amended, and of the variances from compliance; and the director of accounts and reports shall withhold moneys distributed from the local ad valorem tax reduction fund during the next succeeding budget year, otherwise payable to such counties under the laws of this state until the legislature shall hereafter direct the proper disposition of the money so withheld: *Provided,* That the director of property valuation shall prior to the notification of the director of accounts and reports verify the fact that such county is not in compliance with such law by conducting spot valuation appraisals of property of the various classes located within such county."

Retention of local ad valorem tax reduction fund otherwise payable to counties for failure to comply with K. S. A. 79-1439 is a drastic sanction. Criminal sanctions against taxing officials who knowingly and willfully assess property other than as provided by law are set forth in K. S. A. 79-1426 and are punishable by fine, imprisonment and forfeiture of office. These sanctions exemplify the unyielding attitude of the legislature to enforce the thirty percent law.

When a taxpayer's property is appraised for tax purposes at a fixed sum there can be no justification for assessing the same at forty-three percent, rather than the statutory rate of thirty percent. To do so constitutes arbitrary, oppressive action by the taxing officials with sufficient discrimination to constitute constructive fraud. Accordingly, we must reverse the trial court and direct an assessment of the taxpayer's property at the statutory rate. Computation of plaintiff's recovery for taxes paid under protest should be made accordingly.

Reversed with directions.

FATZER, C. J., concurring in part and dissenting in part: I concur in the court's reversal of this case affording the taxpayer relief, but I would direct that his recovery for taxes paid under protest be computed for a greater amount than ordered by the majority opinion.

Since 1963, the rule announced in *Addington v. Board of County Commissioners*, 191 Kan. 528, 382 P. 2d 315, has been the law of this state, which has been consistently followed and reapplied, and I see no sound or compelling reason why it should be disregarded or distinguished on the basis set forth in the court's opinion. In *Addington* we cited and relied upon *Sioux City Bridge v. Dakota County*, 260 U. S. 441, 67 L. Ed. 340, 43 S. Ct. 190, 28 A. L. R. 979, where it was said:

". . . This Court holds that the right of the taxpayer whose property alone is taxed at [here 43 percent] of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law. . . ." (p. 446.)

Neither do I see any sound or compelling reason why *Beardmore v. Ling*, 203 Kan. 802, 457 P. 2d 117 (1969), should likewise be cast aside and overruled; nor do I agree that *Kansas City Southern Rly. Co. v. Board of County Comm'rs*, 183 Kan. 675, 331 P. 2d 899 (1958), is to be distinguished on the basis stated in the court's opinion, or that it has no precedential value in the instant case—impliedly or otherwise.

The court, by directing an assessment of plaintiff's property at the statutory rate (30 percent of fair market value), has entered

the forbidden area of assessing property instead of leaving that task to the proper taxing authorities. The fact there may have been other taxpayers in Shawnee County whose property was assessed at a higher rate than the prevailing median rate and who did *not* pay their taxes under protest, affords no reason for denying the plaintiff his right to have his assessment reduced to the same percentage of fair market value as those whose property was assessed at the median ratio of 15 percent of fair market value. He is entitled to have his tax recovery computed accordingly.