No. 50,040

KELLOGG MALL ASSOCIATES, AN INDIANA LIMITED PARTNERSHIP QUALIFIED TO DO BUSINESS IN KANSAS, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK, KANSAS; THE COUNTY BOARD OF EQUALIZATION OF THE COUNTY OF SEDG-WICK, KANSAS; TOM SCOTT, JOHN HALE, EVERETT PATRICK, COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, AND MEMBERS OF THE COUNTY BOARD OF EQUALIZATION OF SEDGWICK COUNTY, KAN-SAS; DOROTHY WHITE, COUNTY CLERK, SEDGWICK COUNTY, KAN-SAS, AND CLERK OF THE COUNTY BOARD OF EQUALIZATION OF SEDG-WICK COUNTY, KANSAS; AND W. A. WILLIAMS, COUNTY APPRAISER OF SEDGWICK COUNTY, KANSAS, *Appellee.*

(607 P.2d 1330)

Opinion filed March 1, 1980.

*Roger K. Wilson,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, argued the cause and was on the brief for the appellant.

*Richard K. Hollingsworth,* assistant county counselor, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: Kellogg Mall Associates, plaintiff-appellant, is the owner-developer of Towne East Shopping Center in Wichita and challenges the Sedgwick County Assessor's 1976 appraised valuation of said property. The appraised valuation was affirmed by the Sedgwick County Board of Equalization, the State Board of Tax Appeals (sitting as a state board of equalization), and the district court of Sedgwick County. Kellogg Mall Associates, hereinafter referred to as taxpayer, brings this appeal.

Towne East occupies two tracts of land (referred to as Tract 1 and Tract 5), and both tracts are involved in this appeal. With this explanatory statement we turn to the Board of Tax Appeal's complained-of order of April 28, 1977:

ORDER OF BOARD OF TAX APPEALS

"5. That Appellant, Kellogg Mall Associates, is the owner-developer of the improvements which comprise what is known as Towne East shopping center in Wichita, Sedgwick County, Kansas and is the lessee of the land on which those improvements are located from Chrysler Realty Corporation.

"6. That the 1976 appraised value of the property, which is the subject of this appeal, represents the fair market value of that property as asserted by Sedgwick County and as stipulated to by Appellant for the purpose of this hearing only.

"7. That the improvements on Appellant's property known as Tract 5 and bearing tax key no. C-37292 (main shopping area tract) was appraised at a 100% valuation of $13,485,100.00. That the appraisal was arrived at generally by multiplying one-half the number of square feet in the improvements by $38.10; then adding values for escalators and elevator shafts; and, then discounting the total by 16% for unfinished space. That the average square foot value for the improvements, as appraised, is approximately $17.00.

"8. That the land on Appellant's property known as Tract 5 and bearing tax key no. C-37292 (main shopping area tract) was appraised at a 100% valuation of $3,274,566.00 which valuation averages $1.65 per square foot.

"9. That the improvements on Appellant's property known as Tract 1 and bearing key no. C-37292-0004 (Dillard's) was appraised at 100% valuation of $3,120,933.30 resulting in a square foot average valuation of approximately $17.50.

"10. That the land on Appellant's property known as Tract 1 and bearing key no. C-37292-0004 (Dillard's) was appraised at a 100% valuation of $1,076,933.30 resulting in a per square foot average valuation of $1.84. Appellant is requesting the appraised valuation for 1976 to be reduced to the following amounts:

"A. Improvements Tract 5 Key No. C-37292
623,008 square feet of unfinished space as of January 1, 1976 at $7.00 per square foot (which has the effect of leaving the unfinished space in the total valuation at an average of $2.00 per square foot) added to 180,000 square feet of mall area at $6.00 per square foot for a total 100% valuation of $5,728,072.00.

"B. Land Tract 5 Key No. C-37292
45 acres at $1.00 a square foot for a total 100% appraised valuation of $1,960,200.00.

"C. Improvements Tract 1 Key No. C-37292-0004
179,000 square feet at $9.00 per square foot for a 100% appraised valuation of $1,611,000.00.

"D. Land Tract 1 Key No. C-37292-0004
13.431 acres at $1.00 per square foot for a 100% appraised valuation of $585,054.36.

"11. APPELLANT ASSERTS:

"A. That the shopping centers known as Pawnee Plaza, The Mall, Twin Lakes, and Prairie Village all located in Wichita, Sedgwick County,

Kansas, while not identical to Appellant's property, are sufficiently similar to be considered comparables.

"B. That the appraised fair market valuations for the centers referred to above as Pawnee Plaza, The Mall, Prairie Village, and Twin Lakes were arrived at by the Sedgwick County Assessor's office by totalling the valuations of various areas of the centers which were appraised separately, such as but not limited to, separate appraisals for mall areas, unfinished space, and store areas.

"C. That the methods and procedures used by the Sedgwick County Assessor's office in appraising Towne East were not the same as those used for the other shopping centers referred to above.

"D. That the 1976 valuations for the comparable shopping centers referred to above as Pawnee Plaza, Twin Lakes, Prairie Village, and The Mall do not reflect their fair market values for the year 1976 and that said properties are undervalued.

"E. That in order for the statutory and constitutional requirements of uniformity and equality in appraisement and assessment for tax purposes to be met, the appraised valuation for Appellant's property should be reduced to values commensurate with the aforementioned shopping centers in Sedgwick County.

"F. Appellant stipulated, for the purposes of this appeal only, that the valuations placed on its property for the year 1976 by the Sedgwick County Assessor's office represented its fair market value and Appellant offered no evidence that the valuations exceeded fair market value. The foregoing stipulation was entered into by Appellant only for the reason that the main legal basis of its claim for relief in this matter is that the statutory and constitutional requirements of appraising all real property uniformly and equally at fair market value were not adhered to by the Sedgwick County Assessor's office and that such actions by the Sedgwick County Assessor's office were therefore, arbitrary, oppressive and discriminatory, constituting fraud upon the rights of the Appellant.

"12. SEDGWICK COUNTY ASSERTS:

"A. That as to the improvements on Tract 5, the County Assessor's office at the time of appraisal allowed 16% depreciation factor for unfinished space.

"B. That the property in question was personally inspected by person, or persons from the office of the Sedgwick County Assessor who appraised and assessed said property at the time of its valuation.

"C. The position of Sedgwick County is that the properties suggested by the appellant as comparable to the instant property are not comparable with the property of the taxpayer and there is, in fact, no comparable property in Sedgwick County, Kansas.

"D. That at the time the Sedgwick County Assessor appraised the taxpayer's property for fair market value, the County Assessor considered the factors as required by K.S.A. 79-503.

"E. That the assessed value of the appellant's property, as well as other properties located within Sedgwick County, Kansas, is thirty percent (30%) of the fair market value as determined by the Sedgwick County Assessor.

"F. Usual and customary practice of the Sedgwick County Assessor's office is to grant depreciation allowance in proportion to the amount of unfinished space.

"13. K.S.A. Supp. 79-1439 states in part that:

. . . all real and tangible personal property which is subject to general property taxes shall be appraised *uniformly and equally at its fair market value in money* as defined in K.S.A. 1968 Supp. 79-503, as amended . . .

"14. K.S.A. Supp. 79-1406 also states in part that 'all property real or personal, shall be appraised at its fair market value in money . . .'

"15. The foregoing statutes find their constitutional basis in Article 11 Section 1 of the Kansas Constitution which states in part that:

the legislature shall provide for a uniform and equal rate of assessment and taxation . . .

"16. The appellant submitted some five (5) other properties which they alleged are comparable to the instant properties. This Board having had the opportunity to make personal site views of the appellant's property and the property suggested by the appellant as comparable can readily realize that the properties alleged to be comparable by the appellant to the instant property are, in fact, not comparable. Furthermore, the Board heard testimony from the Sedgwick County Assessor that the taxpayer property is not comparable in location, design, construction, configuration, etc. Testimony was that, in fact, there is not another comparable property as the taxpayer's in Sedgwick County, Kansas.

"17. The only evidence introduced as to the fair market value of the alleged comparable properties is the records of the Sedgwick County Assessor's office. Appellant presented no evidence that would show that the fair market value as determined by the Sedgwick County Assessor's office of the alleged compared properties, are not, in fact, their true fair market values. The evidence before the Board was that the person, or persons, from the Sedgwick County Assessor's office had made personal inspection of the property of the appellant. It was testified before this Board that the Sedgwick County Assessor's office making valuations of properties in Sedgwick County, Kansas, considered all the factors as provided in K.S.A. 79-503. Testimony further showed these factors were considered in the valuation of the appellant's property, and those properties alleged to be comparable property by the appellant.

"18. The Board has reviewed the transcript of the testimony of Mr. Gerald Sanders and Mr. Louis Earle of the Sedgwick County appraiser-assessor's office. It is the finding and conclusion of the Board that the essence of said testimony, taken in its most favorable light, from the viewpoint of the taxpayer-appellant, is that, compared to speculative sale prices, the alleged comparables referred to by the appellant, have been appraised at a fair market value lower than the price that could be expected from a sale of those properties. No evidence of sales of comparable properties was introduced. It is further noted that the Board has not been provided with evidence of net income capitalization concerning appellant's properties as

compared to that of the other alleged comparables. In this connection, the Board notes K.S.A. 79-503 which, in setting forth factors to be 'used in connection with' sales as criteria of fair market value, provides that 'sales in and of themselves shall not be the sole criteria of fair market value but shall be used in connection with cost, income and such other factors as may be appropriate including but not by way of exclusion': classification of lands and improvements, size, location, depreciation, including physical deterioration or functional, economic or social obsolescence, cost of reproduction or improvements, productivity, earning capacity as indicated by lease price or by capitalization of net income, rental or reasonable rental values, sale value on open market with due allowance to abnormal inflationary factors influencing such values, and comparison with values of other property of known or recognized value, together with a specific proviso that 'the ratio study shall not be used as an appraisal for appraisal purposes'. The section further provides that 'the appraiser or assessor in arriving at fair market value in money may use different factors in determining the classifications best suited to arrive at fair market value in money as defined in this section'. Without exact summarization in narrative form, it is noted that during extensive and thorough cross-examination, Mr. Earle repeatedly stated and qualified his observation (that other shopping centers, referred to by him, were appraised too low) by stating that said properties were too low 'in terms of the selling price'. During repeated questioning Mr. Earle stated that the valuations of the other properties were 'our fair market value'; and

"19. The stipulation that, for the purpose of this hearing, Appellant's property was appraised at its fair market value, the consequent assessment at 30% thereof was fully in compliance with and mandated by K.S.A. 79-1439. Absent evidence that all the alleged comparable properties were assessed at less than fair market value (that the assessments were 30% of appraised value is not questioned), the case of *Gordon v. Hiett,* 214 Kan. 690, 522 P.2d 942, would dictate a denial of the application of appellant's assessment below 30%; however, it is noted that this Board has not been provided with evidence that the alleged 'comparables' were in fact comparables as appellant asserts; nor has it been shown that they were appraised at less than fair market value, or that they were all assessed at less than 30% of fair market value. Appellant's stipulation, coupled with a lack of necessary evidence requires this Board to approve the assessment mandated by the Legislature.

"20. The evidence herein presented is insufficient to establish a systematic, arbitrary, or intentional discrimination against the appellant's property with respect to the fair market value of real estate in the County.

"21. The evidence herein presented fails to establish conduct of the Sedgwick County Assessor as arbitrary, oppressive and grossly discriminatory that it would constitute a fraud on the right of the appellant.

"22. It is certainly fair to observe that, taken in its total context, the evidentiary presentation of Sedgwick County during the course of the hearings on these matters, shows probable cause for believing that the taxing officials of Sedgwick County, Kansas should forthwith give the most serious

consideration to whether there is a need for a reappraisal and reassessment of all shopping center properties located within Sedgwick County. The Board, of course, is fully aware of the administrative and technical difficulties involved in carrying out such activities, if needed; nevertheless, the Board observes and points out that reappraisal and reassessment is a continuing obligation and that the Constitution and the Statutes of the State of Kansas require equal appraisal and assessment together with appraisal and assessment of property based upon fair market value. In this connection, the Board is mindful of its own power, duties, and responsibilities and it is the sincere hope and belief of this Board that the foregoing observations should be considered sufficient to prompt immediate inquiry on the part of those Sedgwick County taxing officials responsible for effecting proper appraisal and assessment within constitutional and statutory guidelines and requirements; and

"23. The instant appeals have been vigorously prosecuted by the appellant and defended by Sedgwick County. Counsel for each of the adversaries are to be commended for their thorough raising and discussion of all relevant issues necessary to this decision. All questions raised by counsel have been most seriously considered by the Board in its deliberations; and

"24. Having considered all relevant factors involved in the instant appeals, the Board concludes and determines that said appeals should be and they are hereby denied and no modification will be made concerning the valuations of appellant's property as determined by the taxing officials of Sedgwick County and as approved by the Board of Equalization of Sedgwick County for the tax year 1976.

"IT IS SO ORDERED."

Five members of the Board of Tax Appeals heard the appeal, with four members approving the order. The fifth member, LeRoy Randolph, Jr., wrote the following dissent:

### DISSENTING OPINION

"I respectfully dissent from this Board's denial of relief of the taxpayer-shopping center wherein the taxpayer-shopping center sought to be taxed uniformly and equally with other shopping centers in Sedgwick County.

"The testimony of the Assessor in this case rather clearly indicates that the other shopping centers in Sedgwick County were appraised too low. This being an Equalization matter, the taxpayer-shopping center was well within the equalization statute in requesting a lower appraisal. In this regard, I am in accord with the cases of *Addington v. Board of County Commissioners,* 191 Kan. 528, 382 P.2d 315; and Chief Justice Fatzer's dissent in *Gordon v. Hiett,* 214 Kan. 690, 522 P.2d 942.

"The taxpayer's stipulation as to their being at fair market value for purposes of this appeal, was conditioned on the concepts of equal treatment as enunciated in the cases above cited and embodied in the principal of equalization enunciated in the case of *Sioux City Bridge v. Dakota County,* 260 U.S. 441, 67 L.Ed. 340, 43 S.Ct. 190; cited and relied on by the Kansas Supreme Court in *Addington.*

"For these reasons I would reduce the taxpayers assessment in accord with the percentage of assessment of other shopping centers in Sedgwick County which are all admittedly 'too low'."

## ORDER OF THE DISTRICT COURT

The taxpayer appealed this order to the district court. The district court, in essence, adopted all of the Board's findings and added the following:

"(3) The State Board of Equalization's Order was supported by substantial evidence that the Plaintiff's property was assessed at fair market value, and assessed or appraised at fair market value and assessed for taxes at 30% of said value.

"(4) The Court finds that the testimony reflects that the Board considered all pertinent factors mandated by K.S.A. 79-503 in arriving at the appraised values. The finding that the property of the Plaintiff was not comparable to the alleged comparable properties was based on their own personal inspection of the property and the testimony of the County Assessor."

### The district court then concluded:

"(1) A District Court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by the evidence, and (3) the tribunal's action was within the scope of its authority. *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828.

"(2) The Board did not act fraudulently, arbitrarily, or capriciously in finding that the evidence was insufficient to establish that the Plaintiff was entitled to any relief.

"(3) It is not this Court's prerogative to substitute its judgment for that of the Board in weighing conflicting evidence and it will not do so. The Order of 4/28/77 was supported by substantial evidence that the Plaintiff's property and the comparable properties were assessed at fair market value and appraised at fair market value and assessed for taxes at 30% of said value.

"(4) Inasmuch as the Plaintiff admits that it is assessed in accordance with K.S.A. 79-1439 at 30% of fair market value as mandated by the Legislature, it would not, in any event, be entitled to have its assessment lowered by this Court, citing *Gordon v. Hiett,* 214 Kan. 690.

"(5) The Court further finds that the Board's action was within the scope of its authority.

"(6) The Board did not act unreasonably, fraudulently, arbitrarily, or capriciously in finding that the property of the Plaintiff was not comparable to the alleged comparable properties based on their own personal inspection of the property and the testimony of the County Assessor.

"IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that the appeals of Kellogg Mall Associates from the decision of the State Board of Tax Appeals in Appeals numbered 12-76-E and 13-76-E be and the same are hereby denied and that judgment be and is hereby granted against said Kellogg Mall Associates for the costs herein for which let execution issue."

The issues on appeal fall into two categories. The first consists

of multiple claims of error in the Board's findings. The second deals with whether, even with favorable evidentiary findings, the taxpayer would be barred from relief by virtue of the holding of *Gordon v. Hiett,* 214 Kan. 690, 522 P.2d 942 (1974), inasmuch as the taxpayer had stipulated its property was appraised at fair market value and it was undisputed that the statutory 30% assessment had been uniformly applied to all properties.

The pertinent constitutional and statutory provisions are as follows:

The Kansas Constitution, Art. 11, § 1, provides: "The legislature shall provide for a uniform and equal rate of assessment and taxation . . . ."

K.S.A. 79-1439 requires all property to be "appraised uniformly and equally at its fair market value in money, as defined in K.S.A. 79-503, and assessed at thirty percent (30%) thereof. A variance of ten percent (10%) of such thirty percent (30%) shall not be considered a violation of this subsection."

K.S.A. 79-503 defines fair market value:

"Fair market value in money shall mean the amount of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting, assuming that the parties thereto are acting without undue compulsion and that the property has been offered at the market place for a reasonable length of time. Sales in and of themselves shall not be the sole criteria of fair market value but shall be used in connection with cost, income and such other factors as may be appropriate including but not by way of exclusion:

"(a) The proper classification of lands and improvements;

"(b) the size thereof;

"(c) the effect of location on value;

"(d) depreciation, including physical deterioration or functional, economic or social obsolescence;

"(e) cost of reproduction or improvements;

"(f) productivity;

"(g) earning capacity as indicated by lease price or by capitalization of net income;

"(h) rental or reasonable rental values;

"(i) sale value on open market with due allowance to abnormal inflationary factors influencing such values; and

"(j) comparison with values of other property of known or recognized value. The ratio study shall not be used as an appraisal for appraisal purposes.

. . . .

"The appraiser or assessor in arriving at fair market value in money may use different factors in determining the classifications best suited to arrive at fair market value in money as defined in this section."

The county argues that the taxpayer is precluded from relief on two grounds:

1. The taxpayer did not prove inequality of assessment nor that there was any systematic, arbitrary, or intentional discrimination of assessment.
2. The law as set forth in *Gordon v. Hiett,* 214 Kan. 690, precludes relief because taxpayer admitted he was assessed at fair market value.

The contentions of the taxpayer as to why it should have relief are summarized in the Board's order. Some elaboration is necessary, however. Towne East was new when appraised in 1976—which in essence was its first appearance on the tax rolls. The four allegedly comparable shopping centers were older and their appraised valuations had remained relatively unchanged in 1976 and years immediately prior thereto. The taxpayer contends the assessor's office deliberately held these other shopping centers to their earlier appraisals and, by appraising Towne East on the basis of 1976 values, discriminated against it. In support of this contention the taxpayer took the assessor's figures for all five shopping centers and computed them on an average square foot basis (with year of last in-depth appraisal) as follows:

| Shopping Center | Improvement | Land | Year |
|---|---|---|---|
| 1. Towne East | | | |
| Tract 1 | $17.50 | $1.84 | 1976 |
| Tract 5 | 17.00 | 1.65 | 1976 |
| 2. Pawnee Plaza | 4.27 | .80 & .10 | 1973 |
| 3. Prairie Village | 8.87 | 1.00 & .90 | 1974-75 |
| 4. Twin Lakes | 8.01 | | 1965-66 |
| 5. The Mall | 8.77 | | 1969-70 |

The taxpayer contends discrimination was established by the above averaged figures for what it considers comparable properties, plus the testimony of the Sedgwick County Assessor, Louis Earle, to the effect that the four lower assessed shopping centers would probably sell for more than their appraised value. Mr. Earle also testified that Towne East would probably sell for more than its appraised value, but that testimony was stricken on the basis that the fair market value of Towne East had been stipulated.

The Board of Tax Appeals, the district court, and the parties all

cite *Gordon v. Hiett,* 214 Kan. 690. In *Gordon,* the admitted facts for the year in question were: Taxpayer's property (1) had a fair market value of $198,200; (2) was assessed at $86,560; and (3) the assessed value was 43% of the market value. The facts for the year in question also disclosed that real property in the county was assessed at from 6% to 45% of fair market value, with the median being 15% of fair market value. The proper statutory rate of assessment was 30%, as in the case before us. The court in *Gordon,* on these admitted facts, held:

"When a taxpayer's property is appraised for tax purposes at a fixed sum there can be no justification for assessing the same at forty-three percent, rather than the statutory rate of thirty percent. To do so constitutes arbitrary, oppressive action by the taxing officials with sufficient discrimination to constitute constructive fraud. Accordingly, we must reverse the trial court and direct an assessment of the taxpayer's property at the statutory rate. Computation of plaintiff's recovery for taxes paid under protest should be made accordingly." p. 698.

The taxpayer relies heavily on the earlier case of *Addington v. Board of County Commissioners,* 191 Kan. 528, 382 P.2d 315 (1963), which was distinguished in *Gordon* on the basis that the 30% statutory rate of assessment was not in effect. In *Addington,* the taxpayer established through his evidence that his property was assessed at more than 30% of its true value and that the median ratio of assessed value of real estate to its sale value on property sold in the county during the year in question was 12%. This court, in *Addington,* held:

"Under the facts, as more fully set forth in the opinion, the rate of assessment fixed by the county clerk-assessor at more than thirty per cent of the true value of plaintiff's property, as compared to the rate of assessment of twelve per cent of the market value of all other property located in the county and subject to the same tax levy, was so arbitrary, oppressive and grossly discriminatory that it constituted constructive fraud on the rights of the taxpayer and destroyed uniformity and equality in the manner of fixing the assessed valuation, and was illegal." Syl. ¶ 5.

In *Addington,* the taxpayer was able to establish that his property had been singled out for a discriminatory assessment and relief was granted under the factual situation.

In both cases there was no real dispute on appeal that the taxpayers' respective properties were assessed at a much higher percentage of market value than the vast majority of other properties within the county. Assessment uniformity, rather than valuation uniformity, was the crux of both cases and each case turned on whether the taxpayer was entitled to relief on the

basically undisputed assessment disparities shown. Contrast this to the case before us, where:

1. By stipulation, the appraised value of the taxpayer's property is its true market value;
2. It is undisputed that the statutory 30% rate of assessment is uniformly applied to all property within the county;
3. There are approximately 150,000 parcels of land within the county;
4. Taxpayer's claim of discriminatory treatment is based on the appraised valuation of four of the 150,000 parcels;
5. The four parcels of land so selected by taxpayer as "comparables" are in the same general classification of business as taxpayer's land, *i.e.*, shopping centers;
6. Taxpayer presented no evidence as to what the correct market value of any of the "comparables" should be; and
7. The claim of discriminatory treatment rests primarily on the fact the appraised values of the "comparables" had not substantially increased with the passage of time and that the "comparables," if sold, would probably sell for more than their appraised values.

The proper standard of judicial review of acts of administrative agencies was set forth in the much quoted case of *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, Syl. ¶¶ 1 and 2, 436 P.2d 828 (1968):

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority."

"In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court."

The fact that this court shall review on the same basis as did the district court is particularly significant in this case where a new ground for affirmance was added by the district court. The county contends that even if the taxpayer had proven its contentions, relief would still have been barred by virtue of *Gordon v. Hiett,* 214 Kan. 690. The Board stated:

"19. The stipulation that, for the purpose of this hearing, Appellant's property was appraised at its fair market value, the consequent assessment at 30%

> thereof was fully in compliance with and mandated by K.S.A. 79-1439. Absent evidence that all the alleged comparable properties were assessed at less than fair market value (that the assessments were 30% of appraised value is not questioned), the case of *Gordon v. Hiett,* 214 Kan. 690, 522 P.2d 942, would dictate a denial of the application of appellant's assessment below 30%; however, it is noted that this Board has not been provided with evidence that the alleged 'comparables' were in fact comparables as appellant asserts; nor has it been shown that they were appraised at less than fair market value, or that they were all assessed at less than 30% of fair market value. Appellant's stipulation, coupled with a lack of necessary evidence requires this Board to approve the assessment mandated by the Legislature."

Clearly, the Board did not conclude that *Gordon v. Hiett* was an absolute bar to the taxpayer's claim for relief by virtue of the stipulation. The arguments to the Board went to evidentiary considerations and no claim of "absolute bar" was made.

The district court affirmed the Board, applying the rules for judicial review enunciated in *Foote,* and further concluded:

> "(4) Inasmuch as the Plaintiff admits that it is assessed in accordance with K.S.A. 79-1439 at 30% of fair market value as mandated by the Legislature, it would not, in any event, be entitled to have its assessment lowered by this Court, citing *Gordon v. Hiett,* 214 Kan. 690."

We have carefully reviewed the record and conclude: (1) The Board acted within the scope of its authority; (2) the Board's order was substantially supported by the evidence; (3) the Board did not act fraudulently, arbitrarily, or capriciously; and (4) the district court did not err in so concluding. By virtue of this result we do not reach the issues of the propriety of the district court's determination relative to the effect of *Gordon v. Hiett.*

All points raised, whether or not specifically enumerated herein, have been considered and found to be without merit.

The judgment is affirmed.

HOLMES, J., not participating.

Pursuant to Article 3, section 6(*f*), of the Constitution of the State of Kansas, the Honorable Floyd H. Coffman, judge of the district court of the Fourth Judicial District, was assigned by the Chief Justice to participate in this court's decision in the foregoing case, *vice* Holmes, J.

MILLER, J., dissenting: The Board of Tax Appeals issued a split decision. Commissioner Randolph recognized the disparity

which is clearly demonstrated by the testimony of the assessor when he stated in effect that his office is keeping the appraisal of the other shopping centers in Wichita at the 1972 or 1971 level, while the appraisal on appellant's property reflects its 1976 value.

I agree with Commissioner Randolph that appellant is entitled to relief. I therefore respectfully dissent.

HERD, J., joins in the foregoing dissent.